No.  89-073

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

LUCY MARIE REDCROW,

        Defendant and Appellant.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Margaret L. Borg, Public Defender, Missoula, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General, Helena, Montana
James Yellowtail, Asst. Attorney General, Helena
Robert L. Deschamps, County Attorney, Missoula,
Montana

Submitted on Briefs:  Jan. 18, 1990

Decided:  Mar. 29, 1990

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Lucy Marie Redcrow was convicted of deliberate homicide by a jury in the Fourth Judicial District, Missoula County, Montana. Ms. Redcrow was sentenced to a term of fifty years, with an additional ten years for the use of a weapon, the sentences to run consecutively. She was designated a dangerous offender for purposes of parole. Ms. Redcrow appeals her conviction. We affirm.

The issues presented for our review are:

1. Did the District Court err in denying a new trial to Lucy Marie Redcrow?

2. Did the District Court err in denying separate trials to Lucy Marie Redcrow and her co-defendant, Paul Regudon?

In the early evening hours of August 26, 1987, the body of Marie Richie was discovered by Missoula City Police Officers along the bank of the Clark Fork River in Missoula, Montana. Paul Regudon was apprehended nearby. Lucy Marie Redcrow was also discovered in the brush along the Clark Fork River not far from the location of the victim's body.

Law enforcement officers determined that the homicide had been committed at the nearby Sweetrest Motel, in Room 23. In this room, which was registered to Paul Regudon, law enforcement officers found large amounts of blood, and a

knife later determined to be the one used in the stabbing of Ms. Richie.

In the months prior to August 26, 1987, Lucy Marie Redcrow, Paul Regudon, Marie Richie, Kathy Glover, and Frank Fry shared the residence of Ronald Fry in Missoula, Montana. Kathy Glover moved out, leaving a jacket at the Fry residence. Ms. Glover heard that Marie Richie had disposed of the jacket. Ms. Glover and Ms. Redcrow made several demands upon Marie Richie to return the jacket. On August 26, 1987, Ms. Glover and Ms. Redcrow met at a Missoula bar called Flippers, and agreed to "beat up" Marie Richie. Ms. Redcrow left the bar and returned later with Ms. Richie accompanying her. At the bar, both women made threats to Ms. Richie. Ms. Redcrow took a closed knife from her pocket and threatened Ms. Richie with it.

The three women left the bar and began walking along the south bank of the Clark Fork River. Ms. Glover testified at trial that she hit Ms. Richie in the back several times during this walk. She also testified that she hit Ms. Richie in the face, possibly breaking Ms. Richie's nose, while Ms. Redcrow restrained Ms. Richie. Ms. Glover also testified that Ms. Redcrow repeatedly hit Ms. Richie in the back of the head with a closed knife. Ms. Glover testified that Ms. Redcrow ripped Ms. Richie's shirt off, and stabbed her with the knife in the neck.

Several witnesses observed the women during this time. The incident was reported and Missoula City Police Officer Bill Olsen was dispatched to the area. He found Ms. Richie and Ms. Redcrow at McCormick Park. Ms. Glover had returned to the bar by that time. Officer Olsen observed that Ms. Richie was bleeding from the back of the head and offered her assistance. However, Ms. Richie refused assistance and Officer Olsen left the area.

Bill Shorten testified at trial. He stated that he observed two women crossing to the north side of the Clark Fork River via a railroad bridge between 6 and 7 p.m. He stated that the shirt of one of the women was ripped down the front and had bloodstains on it.

Ken Thormuhlen also observed two women walking by his barber shop at about the same time, one of whom had a ripped shirt, and blood on the back of her shirt and neck. He noticed that they were walking in the direction of the Sweetrest Motel.

Another Missoula resident, Chester Field, gave one of his employees, Charles Hoshaw, a ride home. Mr. Hoshaw resided in Room 24 at the Sweetrest Motel. Mr. Field testified that as he started to drive away, a tall Indian girl approached his truck and opened the door to the passenger side. Mr. Field stated that she requested a ride to either

4

Flipper's or to the town of Ravalli; however, he denied her request.

Mr. Hoshaw testified that shortly after Mr. Field dropped him off Ms. Redcrow came to his room and asked for two cigarettes. He observed that her hands and feet were covered with blood.

Another resident of the Sweetrest Motel observed two people carrying a body past his window. He called the police.

On August 27, 1987 an autopsy was performed on Ms. Richie. Dr. Kenneth Mueller found multiple injuries, including five potentially fatal wounds. Four stab wounds had penetrated Ms. Richie's chest cavity and lungs. A fifth wound had severed the left carotid artery.

Although neither Ms. Redcrow nor Mr. Regudon testified at trial, both gave separate video-taped statements to law enforcement officers soon after the incident. On August 27, 1987, Ms. Redcrow gave a statement to law enforcement in which she stated she had stabbed Ms. Richie three or four or maybe more times in the motel room occupied by Paul Regudon at the Sweetrest Motel. On August 27, 1987, Mr. Regudon told law enforcement officers that both Ms. Redcrow and Ms. Richie came to his room at the Sweetrest Motel. He stated that Ms. Redcrow stabbed Ms. Richie to death while Ms. Richie cried out, "Let me live. Let me live." Mr. Regudon stated that he

5

attempted to clean the knife and the shoes worn by Ms. Redcrow, and that he helped Ms. Redcrow carry the body of the victim down to the river. These video-taped statements were introduced into evidence at trial, and heard by the jury.

Lucy Marie Redcrow was charged with deliberate homicide. Paul Regudon was charged with deliberate homicide by accountability. The defendants were tried jointly by jury. Ms. Redcrow was found guilty of deliberate homicide. Mr. Regudon was acquitted.

I

Did the District Court err in denying a new trial to Lucy Marie Redcrow?

Ms. Redcrow was convicted by jury of deliberate homicide on February 19, 1988. The original sentencing date of March 21, 1988, was postponed until April 4, 1988. On April 3, 1988, Ms. Redcrow requested an interview with Dr. Shea, a psychiatrist who had examined her prior to trial. During this conversation, Dr. Shea began to suspect that Ms. Redcrow suffered from "battered women's syndrome". He also concluded that it was possible Ms. Redcrow had not actually committed the homicide, but had confessed to the homicide as a result of her battered woman syndrome. At the request of defense counsel, the sentencing date was again postponed, and on April 22, 1988, defendant moved the court for a new trial.

In the motion for a new trial, defendant urged that new evidence had been discovered, as contained in an affidavit by Dr. Robert Shea. Dr. Shea's affidavit in support of the motion stated that he had administered tests to Ms. Redcrow prior to trial and determined that she was not suffering from a mental disease or defect which would constitute a defense to the crime; that he was informed on April 1, 1988 that Ms. Redcrow desired to see him; that he had interviewed Ms. Redcrow on at least six occasions commencing with April 3, 1988; that since April 3, 1988, Ms. Redcrow had taken the position that she did not cause the death of Marie Ritchie (sic), but was previously covering for the person who did; that Ms. Redcrow's prior willingness to assume responsibility for another's actions is consistent with the battered women's syndrome from which she suffers, and other aspects of her psychological makeup; and that it had taken a unique set of circumstances to allow Lucy Redcrow to reach this point of disclosure, some of which were not in place prior to the trial.

On May 23, 1988 the District Court heard testimony and oral argument on the motion for a new trial. Dr. Shea testified at this hearing. In substance his testimony indicated that prior to trial he had found Ms. Redcrow did not suffer from mental disease or defect and could assist in her own defense. He stated that after trial, on the evening of Good

7

Friday he was called by personnel from the county jail who stated that Ms. Redcrow was terribly upset. Since Dr. Shea was leaving town he did not see Ms. Redcrow until Sunday morning. At that time she was very angry with him because she had read copies of his presentence investigation reports and the tribal reports. After talking for a while, Ms. Redcrow related to Dr. Shea that she had been having nightmares. Dr. Shea testified that basically the message of her dream was that Ms. Redcrow was to be sentenced for something she did not do.

Dr. Shea testified that he began therapeutic sessions with Ms. Redcrow, during which he recognized the battered women's syndrome. He explained that this syndrome produces feelings of guilt even though one may be a victim. He then stated his belief that Ms. Redcrow was being honest in her present contention that she did not commit the homicide. He stated that he would support her in this position.

Both parties briefed the motion. In a memorandum and order, dated September 21, 1988, the District Court denied the motion for a new trial. Ms. Redcrow contends the District Court abused its discretion in denying her a new trial.

A new trial may be granted pursuant to § 46-16-702, MCA, which provides:

> Motion for a new trial. (1) Following a verdict or finding of guilty, the court may grant

8

the defendant a new trial if required in the interest of justice.

(2) The motion for a new trial must be in writing and must specify the grounds therefor. It must be filed by the defendant within 30 days following a verdict or finding of guilty. Reasonable notice of the motion must be served on the state.

(3) On hearing the motion for a new trial, if justified by law and the weight of the evidence, the court may:

(a) deny the motion;

(b) grant a new trial; or

(c) modify or change the verdict or finding by finding the defendant guilty of a lesser included offense or finding the defendant not guilty.

Initially, we address the fact that Ms. Redcrow's motion for a new trial was not filed within thirty days following the verdict, as required by the statute. Defendant was found guilty on February 19, 1988, and this motion was not filed until April 22, 1988. The District Court noted this untimeliness in its order, yet addressed the motion on its merits since the motion was filed within a "reasonable period of time" after the verdict, and because of the serious nature of the offense. We point out that these factors did not require the District Court to entertain this motion. State v. Best (1972), 161 Mont. 20, 26, 503 P.2d 997, 1000. However, in view of the extensive consideration of the motion by the District Court, we consider it appropriate to review this issue.

In reviewing the denial of a motion for a new trial, this Court's standard of review is to determine whether the

District Court abused its discretion. State v. Perry (Mont. 1988), 758 P.2d 268, 275, 45 St.Rep. 1192, 1200.

Both parties agree that the factors to consider on a motion for new trial were enumerated in State v. Greeno (1959), 135 Mont. 580, 586, 342 P.2d 1052, 1055, as follows:

> (1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely--that is, does not speak as to facts in relation to which there was evidence at the trial; (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a witness.

In the present case, the arguments of the parties focus on the first three of the above-mentioned factors.

Defendant contends the requisite factors are met in this case. The new evidence Ms. Redcrow presents is her assertion that she did not commit the homicide. This assertion contradicts her previous statement that she stabbed Ms. Richie several times in the motel room. Ms. Redcrow contends that this constitutes new evidence because she did not understand that she was not responsible for the homicide until after the trial, through her interviews with Dr. Shea. Further, she contends she could not, with due diligence, have discovered this prior to trial since the battered women's syndrome had

10

distorted her mental state, and because only time, including certain triggering events, could change her understanding. Ms. Redcrow contends the syndrome is unique in that it produces "learned helplessness" which prevents the victim from asserting her own rights, and that overcoming this syndrome takes time. Ms. Redcrow asserts that because of this syndrome she was unable to disclose to her counsel the information necessary to present a proper defense. Defendant alleges that she has been a victim of battering since the age of five; that this type of abuse placed her under the control of her co-defendant Paul Regudon; and that her distorted mental state led her to accept her own guilt for the offense charged. Defendant contends the evidence is so material that upon a new trial a different result is likely, since in a new trial she would be able to assert her innocence.

The District Court found that defendant's arguments failed on each of the first three factors of the Greeno test, and we agree. Defendant has produced no new facts which were unknown to her prior to trial. Rather, she is attempting to use the syndrome to explain why she did not provide this alleged new evidence prior to trial. Further, Dr. Shea had conducted extensive testing of Ms. Redcrow prior to trial and was aware of Ms. Redcrow's history and abusive relationships. Thus, as to the first two factors, we conclude that Ms. Redcrow's current assertion of innocence is not new evidence

unknown prior to trial, and that the battered women's syndrome could have been discovered with due diligence. We agree with the District Court's conclusion that this syndrome is not a proper basis to justify silence or a false version of the homicide.

The District Court also found that the alleged new evidence was not so material that it would produce a different result at trial. Ms. Redcrow's conviction was based in substantial part on testimony of eyewitnesses who saw her and the victim just prior to the stabbing, as well as corroborating physical evidence. A summary of this evidence follows.

Ms. Glover testified that Ms. Redcrow threatened Ms. Richie with her knife while the blade was opened when they initially met at Flippers. She testified that Ms. Redcrow assaulted Ms. Richie numerous times during the walk along the river, hitting her with the closed knife on the back of the head, stabbing her in the neck with the open knife, and ripping Ms. Richie's shirt off.

Officer Olsen testified that Ms. Richie had blood on the back of her head when he spoke to her at McCormick Park. Numerous witnesses, including William Shorten, and Ken Thormuhlen observed Ms. Redcrow and Ms. Richie walking across the railroad bridge and along Broadway toward the Sweetrest Motel. Both Mr. Shorten and Mr. Thormuhlen noticed that Ms. Richie appeared to have difficulty walking.

Mr. Hoshaw, the resident of Room 24 of the Sweetrest Motel, testified that when Ms. Redcrow came to his room requesting cigarettes he noticed blood on her hands and feet. At trial an inmate, Brenda Shoulders, testified that Ms. Redcrow admitted killing Ms. Richie. Substantial trial evidence, independent of Ms. Redcrow's pretrial confession, supports the verdict of deliberate homicide.

At a new trial Ms. Redcrow's assertion of innocence would only present conflicting or inconsistent evidence to be weighed by the jury and as such is not so material as to require a new trial. State v. Miller (Mont. 1988), 757 P.2d 1275, 1289-90, 45 St.Rep. 790, 807 (post trial letters from accomplice exculpating defendant were not new evidence necessitating a new trial but were merely an additional inconsistency for consideration by the jury).

Defendant analogizes to Nagell v. United States (5th Cir. 1966), 354 F.2d 441, where the denial of a motion for a new trial based on newly discovered evidence was reversed on appeal. In Nagell defendant had sustained brain damage in an airplane accident in 1954. This occurred ten years prior to the offense for which he was tried. Numerous doctors examined Nagell for mental competency prior to trial and all concluded he was competent to stand trial. At trial, several doctors testified that Nagell knew the difference between right and wrong at the time of the offense. However, these

13

doctors were unaware of the brain injury and this evidence was not presented at trial. Nagell was convicted. After trial, Nagell began to talk freely with his counsel and disclosed facts previously known only to defendant. In a subsequent hearing, several doctors testified that based on newly discovered evidence which defendant concealed because of a brain injury, he was not able to distinguish between right and wrong at the time the crime was committed. In the present case, defendant analogizes to Nagell, claiming that her syndrome caused her to conceal information prior to trial.

The present case is distinguishable from Nagell. The capacity of Ms. Redcrow to form the requisite intent, or to know right from wrong, is not at issue. At the hearing on the motion for a new trial, Dr. Shea testified that Ms. Redcrow's syndrome would not have affected her ability to assist in preparing her defense. This Court considered a post trial claim of mental disease or defect in State v. Higley (1980), 190 Mont. 412, 621 P.2d 1043, and specifically held that this type of claim may not serve as a basis for a new trial. Higley, 621 P.2d at 1056. We conclude that Nagell is not authority for a new trial in the present case.

The State also contends that the present case merely involves a "recantation," which should be viewed with distrust, citing Perry, 758 P.2d at 275. Ms. Redcrow urges that

14

her present denial of guilt is not a "recantation" of previous testimony. She explains that her original acceptance of guilt merely demonstrates her disturbed perceptions resulting from the syndrome. It is not necessary to discuss whether Ms. Redcrow's present assertion constitutes a recantation. If evidence of Ms. Redcrow's battered women's syndrome and assertions of innocence were presented at a new trial, this would merely constitute additional evidence for the jury to weigh in its deliberations. As noted previously, conflicting or inconsistent evidence is not so material as to require a new trial. Miller, 757 P.2d at 1289-90. Further, we again emphasize the very extensive evidence pointing to Ms. Redcrow's guilt, independent of any testimony on her part.

We affirm the conclusion of the District Court that the asserted new evidence does not satisfy the level of materiality demanded by the Greeno test. Because our conclusions in regard to the first three factors of the Greeno test are dispositive, we need not address the final three factors. We conclude that the District Court properly denied Ms. Redcrow's motion for a new trial based on new evidence. We affirm the order of the District Court.

II

Did the District Court err in denying separate trials to Lucy Marie Redcrow, and her co-defendant, Paul Regudon?

15

On January 11, 1988, counsel for Mr. Regudon moved to sever Mr. Regudon's trial from that of co-defendant, Ms. Redcrow. Ms. Redcrow did not make a similar motion. However, she supported Mr. Regudon's motion to sever with an affidavit stating she had no objection to the severance and that trying the cases together would be prejudicial, especially to defendant Regudon. Ms. Redcrow now contends that based on the asserted new evidence, she was prejudiced by having the cases tried together. She claims prejudice in that she was forced to sit near Mr. Regudon during trial. She claims that the presence of Mr. Regudon, her batterer, exercised control over her even during trial. She claims this was prejudicial in that had he not been present she might have felt free to assert her innocence.

Ms. Redcrow neither moved for a severance nor joined in Mr. Regudon's motion for a severance. "[I]t is the general rule that failure to object to an alleged error at trial results in a waiver of the right to challenge the error on appeal." State v. Howie (1987), 228 Mont. 497, 500, 744 P.2d 156, 158; State v. Long (1986), 223 Mont. 502, 505, 726 P.2d 1364, 1366. Further, Ms. Redcrow's attempt to base the asserted prejudice upon post-trial discovery of new evidence is unavailing. The disposition of a severance motion is determined by the evidence presented at the time of the motion and not upon subsequent developments. People v.

16

Gonzales (Cal.App. 1970), 84 Cal.Rptr. 863, 869-70. The issue of the propriety of the joint trial was not preserved for review by this Court and we will not address this issue.

Affirmed.

_____
                                                    Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

17