No. 98-148

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 95

294 Mont. 252

980 P.2d 622

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LUCY MARIE REDCROW,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey T. Renz, Montana Defender Project; Missoula, Montana

James Taylor and Andrea J. Olsen, Attorneys at Law, Confederated

Salish and Kootenai Tribes; Pablo, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General; Helena, Montana

Michael W. Sehestedt, Acting Missoula County Attorney; Betty

Wing, Deputy County Attorney; Missoula, Montana

No

Submitted on Briefs: December 3, 1998

Decided: May 11, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. On February 19, 1988, Lucy Marie Redcrow was convicted of deliberate homicide by a jury in the Fourth Judicial District Court, Missoula County, Montana. On October 20, 1988, Redcrow was sentenced to a term of fifty years, with an additional ten years for the use of a weapon, the sentences to run consecutively. She was designated a dangerous offender for purposes of parole. Redcrow appealed her conviction, and on March 29, 1990, we affirmed her conviction in *State v. Redcrow* (1990), 242 Mont. 254, 790 P.2d 449, *overruled on other grounds by State v. Gollehon* (1995), 274 Mont. 116, 120-21, 906 P.2d 697, 700. On March 29, 1995, Redcrow filed a petition for postconviction relief with the District Court. In an order dated September 12, 1995, the District Court concluded that although Redcrow's petition for postconviction relief was not filed within five years of the defendant's conviction, the issues raised by the petition were significant and should be disposed of on the merits. On May 2, 1997, the District Court entered an order ultimately concluding that Redcrow's petition for postconviction relief was untimely, but then further concluded that "the 'miscarriage of justice' exception to the procedural bar found within Mont. Code Ann. § 46-21-102 allows the state court to examine the record to ascertain whether a constitutional violation occurred." The District Court then concluded that no constitutional violation occurred and dismissed Redcrow's petition for postconviction relief. On December 3, 1997, the District Court denied Redcrow's petition requesting that it reconsider its order dismissing the petition. On January 29, 1998, Redcrow filed a notice of appeal. We affirm.**

¶2. The issues presented on appeal are as follows:

¶3. 1. Did the District Court err when it concluded that Redcrow's petition for postconviction relief was untimely?

¶4. 2. Did the District Court err when it concluded that enforcement of the procedural bar would not result in a fundamental miscarriage of justice?

## FACTUAL BACKGROUND

¶5. Lucy Marie Redcrow was charged by information on September 4, 1987, with one count of deliberate homicide, a felony, as specified in § 45-5-102, MCA (1987), punishable by a maximum sentence of death or life imprisonment. Redcrow was jointly tried by a jury with co-defendant Paul Regudon. On November 29, 1988, the District Court entered judgment following a jury verdict convicting Redcrow of one count of deliberate homicide and sentenced Redcrow to a sixty-year sentence. Redcrow was designated a dangerous offender.

¶6. Redcrow moved for a new trial based on her mental state, which the District Court denied. Redcrow then appealed the judgment and sentence to this Court. We affirmed Redcrow's conviction and sentence on March 29, 1990, in *State v. Redcrow* (1990), 242 Mont. 254, 790 P.2d 449.

¶7. Redcrow was represented in the District Court by court-appointed counsel during pretrial, at trial and sentencing, and on direct appeal. Redcrow's co-defendant, Paul Regudon, was represented by a public defender during pretrial proceedings and at trial.

¶8. The following facts regarding the homicide of which Redcrow was convicted are taken directly from our decision in *Redcrow*.

¶9. In the early evening hours of August 26, 1987, the body of Marie Richie was discovered by Missoula City police officers along the bank of the Clark Fork River in Missoula. Regudon was apprehended nearby. Redcrow was also discovered in the brush along the Clark Fork River not far from the location of the victim's body.

¶10. Law enforcement officers determined that the homicide had been committed at the nearby Sweetrest Motel, in Room 23. In this room, which was registered to

Regudon, law enforcement officers found large amounts of blood, and a knife later determined to be the one used in the stabbing of Richie.

¶11. In the months prior to August 26, 1987, Redcrow, Regudon, Richie, Kathy Glover, and Frank Fry shared the residence of Ronald Fry in Missoula. Glover moved out, leaving a jacket at the Fry residence. Glover heard that Richie had disposed of the jacket. Glover and Redcrow made several demands upon Richie to return the jacket. On August 26, 1987, Glover and Redcrow met at a Missoula bar called Flippers, and agreed to "beat up" Richie. Redcrow left the bar and returned later with Richie accompanying her. At the bar, both women made threats to Richie. Redcrow took a closed knife from her pocket and threatened Richie with it.

¶12. The three women left the bar and began walking along the south bank of the Clark Fork River. Glover testified at trial that she hit Richie in the back several times during this walk. She also testified that she hit Richie in the face, possibly breaking Richie's nose, while Redcrow restrained Richie. Glover also testified that Redcrow repeatedly hit Richie on the back of the head with a closed knife. Glover testified that Redcrow ripped Richie's shirt off, and stabbed her with the knife in the neck.

¶13. Several witnesses observed the women during this time. The incident was reported and Missoula City Police Officer Bill Olsen was dispatched to the area. He found Richie and Redcrow at McCormick Park. Glover had returned to the bar by that time. Officer Olsen observed that Richie was bleeding from the back of the head and offered her assistance. However, Richie refused assistance and Officer Olsen left the area.

¶14. Bill Shorten testified at trial. He stated that he observed two women crossing to the north side of the Clark Fork River via a railroad bridge between 6 and 7 p.m. He stated that the shirt of one of the women was ripped down the front and had bloodstains on it.

¶15. Ken Thormuhlen also observed two women walking by his barber shop at about the same time, one of whom had a ripped shirt, and blood on the back of her shirt and neck. He noticed that they were walking in the direction of the Sweetrest Motel.

¶16. Another Missoula resident, Chester Field, gave one of his employees, Charles

Hoshaw, a ride home. Hoshaw resided in Room 24 at the Sweetrest Motel. Field testified that as he started to drive away, a tall Native American girl approached his truck and opened the door to the passenger side. Field stated that she requested a ride to either Flippers or to the town of Ravalli; however, he denied her request.

¶17. Hoshaw testified that shortly after Field dropped him off, Redcrow came to his room and asked for two cigarettes. He observed that her hands and feet were covered with blood.

¶18. Another resident of the Sweetrest Motel observed two people carrying a body past his window. He called the police.

¶19. On August 27, 1987, an autopsy was performed on Richie. Dr. Kenneth Mueller found multiple injuries, including five potentially fatal wounds. Four stab wounds had penetrated Richie's chest cavity and lungs. A fifth wound had severed the left carotid artery.

¶20. Although neither Redcrow nor Regudon testified at trial, both gave separate video-taped statements to law enforcement officers soon after the incident. On August 27, 1987, Redcrow gave a statement to law enforcement in which she stated she had stabbed Richie three or four or maybe more times in the motel room occupied by Regudon at the Sweetrest Motel. On August 27, 1987, Regudon told law enforcement officers that both Redcrow and Richie came to his room at the Sweetrest Motel. He stated that Redcrow stabbed Richie to death while Richie cried out, "Let me live. Let me live." Regudon stated that he attempted to clean the knife and the shoes worn by Redcrow, and that he helped Redcrow carry the body of the victim down to the river. These video-taped statements were introduced into evidence at trial and heard by the jury. In addition to Redcrow's video-taped statement, Brenda Shoulders, an inmate, testified at trial that Redcrow admitted to her that she killed Richie.

¶21. Redcrow was found guilty of deliberate homicide. Regudon was acquitted.

¶22. One basis for Redcrow's motion for new trial was that new evidence was discovered which supported a diagnosis that she was suffering from "battered woman's syndrome," causing her to confess to the murder of Richie, when, in fact, someone else caused Richie's death. The District Court conducted a hearing on the

motion which included the testimony of a psychiatrist who examined Redcrow and testified that she suffered from the syndrome and believed that she did not commit the homicide. After argument and briefing, the District Court denied the post-trial motion, noting in part that the psychiatrist had examined Redcrow on several occasions prior to trial and further that the new evidence was not so material that it would produce a different result. The denial of Redcrow's motion for new trial was appealed and affirmed by this Court. *See Redcrow*, 242 Mont. at 263, 790 P.2d at 454.

## STANDARD OF REVIEW

¶23. We review a district court's conclusions of law in a postconviction relief matter to determine whether they are correct. *See State v. Sullivan* (1997), 285 Mont. 235, 239, 948 P.2d 215, 218.

## ISSUE 1

¶24. Did the District Court err when it concluded that Redcrow's petition for postconviction relief was untimely?

¶25. At the time of Redcrow's conviction in 1988, the period for filing a petition for postconviction relief was within five years of the date of conviction. *See* § 46-21-102, MCA (1987).[1] Section 45-2-101(15), MCA (1987), defines "conviction" as:

[A] judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury.

¶26. Redcrow maintains that the date of her conviction was March 29, 1990, when this Court rendered its decision affirming her conviction in *State v. Redcrow* (1990), 242 Mont. 254, 790 P.2d 449. Redcrow argues that because she filed her postconviction petition on March 29, 1995, five years from the date of our decision, she filed it within the five-year statute of limitations. In the alternative, Redcrow maintains that the statute of limitations is tolled pending appeal. The District Court applied the statutory definition of "conviction," as found in § 45-2-101(15), MCA (1987), and concluded that Redcrow did not file her petition for postconviction relief within the time period set forth in § 46-21-102, MCA (1987).

¶27. The State maintains that the District Court was correct when it concluded that Redcrow's petition was not timely filed. The State argues that the actual date of Redcrow's conviction was the day the District Court entered Redcrow's judgment on November 29, 1988. Therefore, the State maintains, Redcrow's petition was filed six and one-half years after her conviction, well beyond the five-year bar as set forth in § 46-21-102, MCA (1987).

¶28. In other postconviction relief cases, this Court has followed the plain meaning of the statutes and considered the conviction to occur at the time the verdict is rendered. *See State v. Howard* (1997), 282 Mont. 522, 527, 938 P.2d 710, 713 (wherein we held that § 46-21-101, MCA, is "unequivocal" on its face); *Beach v. Day* (1996), 275 Mont. 370, 913 P.2d 622 (The jury rendered a verdict of guilty in 1984. Beach appealed his conviction and we rendered our decision in 1985. Beach filed for postconviction relief in 1995. We held that Beach was "convicted" in 1984.).

¶29. We agree with the District Court that pursuant to the definition of "conviction" in § 46-2-101(15), MCA (1987), Redcrow was convicted when her jury rendered a verdict of guilty in February 1988, and the District Court imposed her sentence in October 1988. Redcrow, however, did not file her petition for postconviction relief until six and one-half years later, in March 1995. Therefore, we conclude that the District Court correctly concluded that Redcrow did not file her petition within the statute of limitations as set forth in § 46-21-102, MCA (1987).

ISSUE 2

¶30. Did the District Court err when it concluded that enforcement of the procedural bar would not result in a fundamental miscarriage of justice?

¶31. After the District Court determined that Redcrow did not timely file her postconviction petition, it initially indicated that it still intended to consider Redcrow's petition because "the issues raised by the petition are significant and it is the opinion of this Court that they should be disposed of on the merits." After a reconsideration of its initial decision, the District Court cited *Rudolph v. Day* (1995), 273 Mont. 309, 902 P.2d 1007, and correctly noted that this Court has enforced the statute of limitations and created only a limited exception to the five-year statute of limitations. That exception exists only when there is a "fundamental miscarriage of

justice."

¶32. Because this Court has never defined "miscarriage of justice," the District Court ultimately concluded that this exception to the procedural bar found within § 46-21-102, MCA (1987), "allows the state court to examine the record to ascertain whether a constitutional violation has occurred." The District Court then reviewed the record and each of Redcrow's claims of error and ultimately concluded that no constitutional violation occurred.

¶33. While this Court has never clearly defined the fundamental miscarriage of justice exception to § 46-21-102, MCA (1987), the United States Supreme Court defined the phrase when it determined whether to review federal habeas corpus claims that are procedurally defaulted. The United States Supreme Court excused a procedural default when the petitioners showed that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schulp v. Delo* (1995), 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808, 836; *see generally State v. Perry* (1988), 232 Mont. 455, 463, 758 P.2d 268, 273. Actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Schulp,* 513 U.S. at 329, 115 S. Ct. at 868, 130 L. Ed. 2d at 837. A fundamental miscarriage of justice exception is extremely rare and is limited to extraordinary cases. *Schulp,* 513 U.S. at 324, 115 S. Ct. at 865-66, 130 L. Ed. 2d at 834. The fundamental miscarriage of justice exception is concerned with actual and not legal innocence. *See Sawyer v. Whitley* (1992), 505 U.S. 333, 339-40, 112 S. Ct. 2514, 2519, 120 L. Ed. 2d 269, 280.

¶34. The Supreme Court's definition of fundamental miscarriage of justice comports with our declaration that the postconviction statute of limitations is a jurisdictional limit on litigation. We have held that waiver of the time bar is only justified by "a clear miscarriage of justice, one so obvious that the judgment is rendered a complete nullity." *See Petition of Gray* (1995), 274 Mont. 1, 908 P.2d 1352. We have long recognized the importance of applying procedural bars regularly and consistently. *See Tecca v. McCormick* (1990), 246 Mont. 317, 319, 806 P.2d 11, 12.

¶35. Redcrow maintains that what occurred in her case rises to the level of a fundamental miscarriage of justice because Regudon, her co-defendant, was the real killer and, had her attorney effectively represented her, the jury would have

convicted him and not her. Redcrow claims that her attorney failed to preserve for appeal the issue of whether to sever her trial from Regudon's, failed to highlight that there was no physical evidence to connect Redcrow to the crime, failed to highlight the weaknesses of the circumstantial evidence, failed to present evidence of witnesses which would allow the jury to find Redcrow not guilty, and failed to present evidence showing the involvement of anyone else in the crime.

¶36. Redcrow also maintains that her attorney failed to cross-examine numerous witnesses, namely: Officer Bill Olson, who would have testified that Redcrow had probably not stabbed Richie in the neck by the river; Officer Robert Parcell, who would have testified that Regudon's right hand was particularly bloody; Rocky Harris and Officer John Reid, who would have testified that the bloody jeans discovered at the crime scene were not Redcrow's, and that the amount of blood in the motel room was disproportionate to the amount of blood found on Redcrow; Officer Bob Weaver, who would have elaborated on Redcrow's physical condition; Officer Brent Sells, who would have confirmed Charles Hoshaw's statement that Regudon was seen wearing blood-stained overalls; William Newhouse, who would have testified that shoe prints in the motel room were Regudon's; Lynn Kurtz, who would have described the effect of Redcrow's blood alcohol level on her physical ability to commit the crime; Ronald Fry, who would have testified that Redcrow's knife was substantially different from that which caused the wounds on Richie's body; Frank Fry, who would have testified regarding the combative relationship between Regudon and Redcrow; Bill Wicks, who would have testified that the blood stains discovered between Flippers and the Sweetrest Motel had not been secured by police; Dr. Kenneth Mueller, who would have testified about the time of death, the weapon used, and the size and strength of the person who would have killed Richie; William Shorten and Ken Thormuhlen, who would have testified that Redcrow was helping Richie back to the Sweetrest Motel and that Richie did not appear to be in distress or afraid of Redcrow; Charles Hoshaw, who would have testified that Regudon had changed clothes from the time Hoshaw had seen him earlier, and that his coveralls appeared to be "covered in blood"; Darla Velkamp, who would have testified that Glover claimed to have assaulted Riche and did not mention that Redcrow had any role in the initial assault; and Clarence McKean, who would have testified that he did not see Redcrow carrying the body and that he saw a man carrying the body over his shoulders. Redcrow also notes that her attorney pursued an intoxication defense which is not a valid defense in Montana.

¶37. Despite all of these alleged instances of Redcrow's ineffective assistance of counsel, based upon our definition of fundamental miscarriage of justice, we are not convinced that Redcrow meets the standard of being actually innocent. None of the arguments presented by Redcrow overcome the fact that Redcrow confessed to law enforcement to stabbing Richie and denied Regudon's involvement in the murder. Inmate Brenda Shoulders testified that Redcrow admitted to her that she killed Richie. The validity of Redcrow's confession was directly addressed on her motion for new trial and she presented expert testimony before the District Court to support her allegations. The District Court did not grant a new trial and this Court affirmed the denial on direct appeal. None of Redcrow's assertions of ineffective assistance of counsel raised on appeal bear on the validity of her confession. Accordingly, we cannot state that "no reasonable juror would have found the defendant guilty." *Schulp*, 513 U.S. at 329, 115 S. Ct. at 868, 130 L. Ed. 2d at 837. No error by Redcrow's counsel can outweigh the significance of Redcrow's confession, combined with her admission of guilt to inmate Shoulders. A fundamental miscarriage of justice arises only when a jury could find, in light of new evidence, that the defendant is actually innocent of the crime. Redcrow's confession and admission eliminate that possibility in her case.

¶38. Moreover, as we held in *Beach v. Day* (1996), 275 Mont. 370, 913 P.2d 622, because all of Redcrow's claims regarding ineffective assistance of counsel are record-based and not properly described as new evidence, the claims could have been presented prior to the expiration of the five-year statute of limitations.

¶39. Redcrow further maintains on appeal that when the District Court denied her amended petition for postconviction relief, it denied her due process of law by not holding a hearing first, and by incorrectly interpreting the affidavit requirement of § 46-21-104, MCA (1987). Essentially, Redcrow maintains that the District Court should have allowed her another opportunity to present her case beyond what she provided in her amended petition for postconviction relief. Redcrow claims that she should be allowed a hearing to further prove her need for postconviction relief, and that the District Court should have accepted her "lengthy and detailed allegations of fact," rather than strictly requiring affidavits pursuant to § 46-21-104, MCA (1987). Since we have decided that Redcrow's allegations of ineffective assistance cannot overcome her confession and admission to establish a fundamental miscarriage of justice, there is no need to address these issues.

¶40. Redcrow has presented no valid reason, other than an incorrect calculation of the statute of limitations, for not timely filing her petition. As we stated in *Petition of Gray*, 274 Mont. at 2, 908 P.2d at 1352, neither ignorance of the law, nor the need for time to present a pro se defense, is an acceptable excuse for failing to timely file a petition for postconviction relief.

¶41. Accordingly, we conclude that the District Court was correct when it concluded that Redcrow's petition for postconviction relief is barred by the five-year statute of limitations pursuant to § 46-21-102, MCA (1987). As we held in *State v. Baker* (1995), 272 Mont. 273, 281, 901 P.2d 54, 58-59, because Redcrow cannot demonstrate a fundamental miscarriage of justice, we will consistently apply the procedural bar.

¶42. We affirm the judgment of the District Court.


/S/ JIM REGNIER


We Concur:


/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

1. [1]This provision has since been amended and now provides:

**46-21-102. When petition may be filed.** (1) Except as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at any time within 1 year of the date that the conviction becomes final. A conviction becomes final for purposes of this chapter when:

(a) the time for appeal to the Montana supreme court expires;

(b) if an appeal is taken to the Montana supreme court, the time for petitioning the United States supreme court for review expires; or

(c) if review is sought in the United States supreme court, on the date that that court issues its final order in the case.

(2) A claim that alleges the existence of newly discovered evidence that, if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted, may be raised in a petition filed within 1 year of the date on which the conviction becomes final or the date on which the petitioner discovers, or reasonably should have discovered, the existence of the evidence, whichever is later.

Section 46-21-102, MCA (1997).