JUSTICE McKINNON,
concurring in part and dissenting in part.
¶49 It is difficult for me to know where to begin.
¶50 First, by “announc[ing]” the “statutory test” as the new test to be utilized by district courts presented with post-judgment claims of newly discovered evidence, Opinion, ¶ 38, the Court has said nothing to assist the trial courts with their interpretation of § 46-21-102(2), MCA, and has discarded valuable, well-established precedent that was properly understood and applied by the District Court. Second, although we specifically overrule State v. Tyler, 2009 MT 75, 349 Mont. 461, 204 P.3d 685, DuBray v. State, 2008 MT 121, 342 Mont. 520, 182 P.3d 753, and Crosby v. State, 2006 MT 155, 332 Mont. 460, 139 P.3d 832, because those decisions applied the test articulated in State v. Clark, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099, to postconviction claims, Opinion, ¶ 31, we then reinject Clark factors into the postconviction scenario by suggesting that a district court “may seek *382 guidance” from Clark and Crosby, Opinion, ¶ 36. Third, our analysis fails to adequately grasp significant considerations underlying claims of actual innocence, which the legislature sought to protect through its enactment of § 46-21-102(2), MCA, and misconstrues the concurring opinion in State v. Beach, 2013 MT 130, ¶¶ 81-139,370 Mont. 163, 302 P.3d 47 (McKinnon, J., with Baker, Rice, and Simonton, JJ., concurring) {“Beach II concurrence”). Fourth, our decision ignores our own clear precedent interpreting § 46-21-102(2), MCA, established prior to this Court’s misguided decisions of Beach v. State, 2009 MT 398, 353 Mont. 411, 220 P.3d 667 {“Beach F), Tyler, DuBray, Crosby, and State v. Abe, 2001 MT 260, 307 Mont. 233, 37 P.3d 77. Fifth, by announcing a new, lesser burden for obtaining relief, we implicate serious concerns of fairness and equity regarding our resolution of prior claims, particularly those of Barry Beach. Sixth, we violate the well-established rule, indispensable to the administration of justice, that a question once deliberately examined and decided should be considered closed and settled as to further argument, and not subject to a different construction based upon a different composition of this Court.
¶51 Perhaps the starting point for any discussion should be the Beach II concurrence. I wrote the Beach II concurrence to clarify the confusion in our law resulting from Beach I, Tyler, DuBray, Crosby, andA&e. Nothing in the Beach II concurrence “revised” the standards for evaluating substantive and procedural innocence claims. See Opinion, ¶ 20. Rather, the Beach II concurrence reaffirmed our prior clear and unmistakable adoption of Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851 (1995), Herrera v. Collins, 506 U.S. 390, 113 S. Ct. 853 (1993), and the corresponding analysis for evaluating post-judgment claims of newly discovered evidence. Beach II concurrence, ¶¶ 95-96, 105, 119, 123; see State v. Pope, 2003 MT 330, 318 Mont. 383, 80 P.3d 1232; State v. Redcrow, 1999 MT 95, 294 Mont. 252, 980 P.2d 622. Moreover, in adopting Schlup and Herrera to guide our consideration of claims filed pursuant to § 46-21-102(2), MCA, we specifically expanded our reliance on federal jurisprudence and rejected the argument that our existing postconviction jurisprudence was sufficient for evaluation of actual innocence claims. See Pope, ¶ 88 (Rice, J., dissenting). The Court now rejects a test that has been applied since 1999, finding it to be “rigid” and “not suited to the quantum of proof required of a postconviction relief petitioner seeking relief under § 46-21-102(2).” Opinion, ¶ 32. Aside from the Court’s failure to state what that “quantum of proof” is, it is my opinion that a higher burden of *383 proof and a clear standard for evaluating post-judgment claims, whether characterized as “rigid” or not, are necessary to protect the finality of judgments and to ensure consistent and fair evaluation of claims.
¶52 The distinctions articulated in Montana’s case law between procedural and substantive claims of actual innocence, and the corresponding burdens of proof, are well-reasoned and should be maintained. Preliminarily, while a majority of this Court did indeed agree that “the petitioner must affirmatively and unquestionably establish his innocence” in order to prevail on a substantive claim of actual innocence, Beach II concurrence, ¶ 131, we clearly stated that § 46-21-102(2), MCA, also allowed for a procedural claim of actual innocence, pursuant to Schlup, which imposed a lesser burden on the petitioner for obtaining relief. We observed that the language in § 46-21-102(2), MCA, requiring newly discovered evidence that “would establish” that the petitioner did “not engage in the criminal conduct” for which the petitioner was convicted, appeared to be a codification by the legislature, although “perhaps not intentionally,” of the substantive claim of actual innocence in Herrera. Beach II concurrence, ¶ 131. However, nothing in the Beach II concurrence extinguished the ability to raise, pursuant to § 46-21-102(2), MCA, a procedural claim of actual innocence under Schlup. Thus, the Court’s conclusion that requiring the petitioner to “affirmatively and unquestionably establish his innocence” is an intolerably “rigid test” misconstrues the analysis required by the Beach II concurrence, as it only considers the “extraordinarily high” standard applicable to a substantive claim of actual innocence.
¶53 When first charged with a crime, a person is entitled to a presumption of innocence and may insist that his guilt be proven beyond a reasonable doubt. Herrera, 506 U.S. at 398, 113 S. Ct. at 859. Once a defendant has been convicted of the offense with which he has been charged, he is no longer entitled to the presumption of innocence. Herrera, 506 U.S. at 399, 113 S. Ct. at 860. A presumption of guilt now attaches as a result of his conviction and strips him of many of the constitutional safeguards attendant to the presumption of innocence. Although convicted of a crime, a defendant may nevertheless mount a multitude of challenges to his conviction. One such challenge is a claim of newly discovered evidence filed pursuant to § 46-21-102(2), MCA. Because the petitioner is no longer cloaked with the presumption of innocence, however, the existence of newly discovered evidence must be evaluated in light of the principles guiding our analysis of an alleged constitutional error. The distinctions drawn by the United States *384 Supreme Court between substantive claims of actual innocence under Herrera and procedural claims of actual innocence under Schlup are logical and consistent with fundamental principles of criminal law. If a petitioner has received an error-free trial, his conviction should rightfully stand, unless he produces conclusive evidence of his actual innocence. Herrera, 506 U.S. at 417, 113 S. Ct. at 869. With developments in criminal investigation and forensic evidence, we have recognized that a petitioner could conceivably offer evidence definitively proving his actual innocence, irrespective of any constitutional error at his trial or sentencing. Such a substantive or “freestanding” claim of actual innocence was recognized in Herrera, Pope, and Redcrow, although the showing necessary to establish such a claim was never defined. The Court stated only that it would be “extraordinarily high” and that the showing would have to be “truly persuasive,” because when a petitioner makes a substantive, freestanding claim of actual innocence, he is claiming that he is entitled to relief despite a constitutionally valid conviction. Herrera, 506 U.S. at 417, 113 S. Ct. at 869; Pope, ¶ 48; Redcrow, ¶ 33. Accordingly, a Herrera petitioner is entitled to complete exoneration of the charges because he has conclusively established his actual innocence.
¶54 A petitioner unable to conclusively establish a substantive, freestanding claim of actual innocence may nevertheless obtain postconviction review of an alleged constitutional error, if his newly discovered evidence is such that the court cannot have confidence in the outcome of the trial given the allegation of constitutional error. The constitutional error may be any that could normally be raised in a petition for postconviction relief, since successfully raising a “gateway” claim under Schlup entitles the petitioner to review of his constitutional error in a postconviction proceeding.[1] In Pope, ¶ 49, we *385 adopted the Schlup analysis and confirmed that the threshold for a procedural claim of innocence is lower than Herrera and does not itself provide an independent basis for relief. Most importantly, a Schlup petitioner faces a lower threshold because he asserts constitutional error at trial, and his conviction is accordingly not entitled to the same degree of respect as one concededly free of the taint of constitutional error. Schlup, 513 U.S. at 315-16, 115 S. Ct. at 861. Therefore, a petitioner asserting both actual innocence and constitutional error has less of a burden than a petitioner who claims only actual innocence. While a petitioner making a Herrera claim must present evidence of actual innocence so strong that his sentence would be “ ‘constitutionally intolerable’ even if his conviction was a product of a fair trial,” a petitioner making a procedural claim need only present evidence of innocence strong enough “that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error....” Schlup, 513 U.S. at 316, 115 S. Ct. at 861 (emphasis in original). The Schlup actual innocence inquiry does not concern itself with the merits of the constitutional error, but is conducted from the perspective of whether, in light of the newly discovered evidence and if the constitutional error had not occurred, it is more likely than not that no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327-29, 115 S. Ct. at 867-68; Pope, ¶ 58; Redcrow, ¶ 33.
¶55 The Court states, without proper analysis, that “there would be no reason to compare the new evidence to the proof of guilt at trial” if a petitioner can “unquestionably establish his innocence. ” Opinion, ¶ 32. However, as the statute correctly recognizes, under either a substantive, freestanding claim or a procedural claim, the new evidence must always be compared to the evidence adduced at trial. More to the point, in Herrera, the Court evaluated Herrera’s substantive, freestanding claim of actual innocence by considering the affidavits relied upon by Herrera in light of the evidence presented at trial by the prosecution. The Herrera court remarked that the affidavits were inconsistent with one another, the affiants were not subject to cross-examination, the individual identified as the guilty party was deceased, and, for the most part, the affidavits consisted of *386 hearsay. Herrera, 506 U.S. at 417-18, 113 S. Ct. at 869-70. The Herrera court further noted that at trial, the prosecution had produced two eyewitness statements and a written statement by Herrerahimself, all of which indicated he was the guilty party. After considering the newly discovered evidence in light of the evidence produced at trial, the court concluded that Herrera’s showing of evidence fell far short of that required of a defendant convicted of a crime following a trial free of constitutional error. Herrera, 506 U.S. at 418-19, 113 S. Ct. at 870. Similarly, in Pope, pursuant to § 46-21-102(2), MCA, this Court considered Pope’s newly discovered evidence in light of all the evidence produced at trial and concluded that Pope had established his procedural claim and was entitled to a postconviction proceeding to evaluate the alleged constitutional error. We stated:
The complete DNA report tends to deflate the State’s evidence that Pope had intercourse with M. J. While it does not exclude the possibility that he had intercourse with M.J., he cannot be included as a sperm donor based upon the DNA results. The DNA results indicate the presence of a third unknown party. Streeter testified that the unknown party, whose presence is indicated by the DNA test, could have been the type A blood source that Long attributed to Pope. Moreover, in light of the DNA evidence, Long’s testimony and blood type testing is inconclusive. The DNA evidence topples the State’s theory presented to the jury: “If you find that there was a substance in the vaginal fluid and in the panties, that had drained into the panties, you are going to find that that - - of the blood testing was done, the only possible contributor for that is the defendant, Vance Pope.”
Pope, ¶ 60. Thus, this Court is simply wrong when we state that “there would be no reason to compare the new evidence to the proof of guilt at trial.” Opinion, ¶ 32. Certainly, newly discovered evidence for both a substantive, freestanding claim of actual innocence or a procedural claim of actual innocence must always be evaluated in the context of the evidence adduced at trial. This is the only way of determining the significance and relevance of the new evidence. When the Montana Legislature enacted § 46-21-102(2), MCA, in 1997, Schlup and Herrera had already been decided. The statutory requirement that the newly discovered evidence be “viewed in light of the evidence as a whole” is a codification of Schlup and Herrera.
¶56 In my opinion, the principles articulated in Schlup, Herrera, Pope, and Redcrow are sound and in harmony with the important public policy of ensuring finality of state court judgments, which serves both the State’s goal of rehabilitating criminal defendants and the State’s *387 legitimate punitive interests. To upset these principles and to remove an analytical framework allowing consistent evaluation of newly discovered evidence — not only consistent among the various trial courts, but consistent with rules and presumptions inherent in our criminal law — is to unsettle the expectations of consistency and finality held by victims, petitioners, and the State.
¶57 We state we are announcing a new “statutory test” and take comfort in the fact that we are only stating the rule as it has been written by the legislature. However, we have provided no guidance to the district courts and have again changed the rules in a complicated area of jurisprudence, despite attempts made by the Beach II concurrence to clarify those rules. We have failed to recognize consistent and well-reasoned Montana case law recognizing distinctions in claims, burdens of proof, and constitutional error regarding post-judgment claims of newly discovered evidence. We arguably have created issues concerning fairness and equity between those claims previously decided under the more “rigid” test and those now to be decided under a test “suited to the quantum of proof required of a postconviction relief petitioner” — whatever that means. Finally, Clark considerations are inappropriate to a post-judgment claim of newly discovered evidence. While I agree Tyler, DuBray, and Crosby should be overruled to the extent that they applied Clark to post-judgment claims of newly discovered evidence, and concur in that portion of the Opinion, I would not simultaneously reinject Clark as “guidance” for the district courts in considering these claims. At the risk of being too brazen, this appears slightly inconsistent.
¶58 I dissent.

 In Pope, ¶ 55, the constitutional error alleged was that the jury had been improperly instructed that Pope could be found guilty of sexual intercourse without consent with either A. J. or M. J., thus placing into question Pope’s right to a unanimous verdict. Pope also alleged that prosecutorial misconduct and ineffective assistance of counsel denied him the right to a fair trial. Pope, ¶ 55. These allegations of constitutional error were reviewed in a subsequent postconviction proceeding following this Court’s decision that Pope presented sufficient evidence of his actual innocence to place in doubt the reliability of his conviction. Pope, ¶ 70. InRedcrow, ¶¶ 35-36, the constitutional error alleged was ineffective assistance of trial counsel and that her co-defendant was the real killer. This Court found that Redcrow had not demonstrated her actual innocence in light of her confession to law enforcement. Redcrow, ¶ 37. In Schlup, the constitutional claim *385 was that the ineffective assistance of counsel and the withholding of evidence by the prosecution denied him the full “panoply of protections afforded to criminal defendants by the Constitution.” Schlup, 513 U.S. at 314, 115 S. Ct. at 860.