DA 08-0244

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 398

BARRY ALLEN BEACH,

      Petitioner and Appellant,

    v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
                     In and For the County of Roosevelt, Cause No. 1068-C
                     Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Terrance L. Toavs, Attorney at Law, Wolf Point, Montana
            Peter K. Camiel, Mair & Camiel, Seattle, Washington

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; John Paulson, Assistant
            Attorney General, Helena, Montana

            Ryan Rusche, Roosevelt County Attorney, Wolf Point, Montana

                           Submitted on Briefs:  January 22, 2009

                                      Decided:  November 24, 2009

Filed:

              _____
                               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Barry Allan Beach (Beach) appeals from an order of the Fifteenth Judicial District Court, Roosevelt County, that denied his petition for post-conviction relief. We remand to the District Court to hold an evidentiary hearing to assess Beach's alleged newly discovered evidence.

¶2 Beach's appeal requires us to resolve the following issues:

¶3 Whether the District Court properly ruled that Beach's petition for post-conviction relief was procedurally barred.

¶4 Whether the District Court properly ruled that Beach's petition for post-conviction relief was time barred.

¶5 Whether the District Court properly denied Beach's petition for post-conviction relief without holding an evidentiary hearing.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 A jury convicted Beach of deliberate homicide on April 13, 1984. The court sentenced Beach on May 11, 1984, to 100 years in the Montana State Prison without the possibility of parole.

¶7 Beach appealed his conviction on multiple grounds. This Court upheld his conviction and sentence. *State v. Beach*, 217 Mont. 132, 705 P.2d 94 (1985). The Court also denied Beach's petition for rehearing.

¶8 Beach filed a petition for post-conviction relief to this Court on October 30, 1995. The Court held that Beach's petition was procedurally barred either by res judicata and/or by

2

the statutory five-year limitations period for filing a post-conviction relief petition. *Beach v. Day*, 275 Mont. 370, 375, 913 P.2d 622, 625 (1996).

¶9 The Federal District Court for the District of Montana denied Beach's petition for habeas corpus on March 31, 1998. *Beach v. Mahoney*, CV 92-92-BLG-JDS (D. Mont. Mar. 31, 1998). The Ninth Circuit Court of Appeals affirmed. *Beach v. McCormick*, 191 F.3d 459 (table), 1999 WL 685944 (9th Cir. 1999).

¶10 Beach filed a petition in January 2005 for DNA testing of physical evidence that investigators had collected during the homicide investigation. Much of the evidence, including a pubic hair found on the victim's sweater, could not be located for testing.

¶11 Beach filed an application for executive clemency to the Montana Board of Pardons and Parole (MBPP) in 2005. MBPP denied Beach's application on November 30, 2005.

¶12 Beach submitted an application for clemency, pardon, or commutation to Governor Brian Schweitzer. Governor Schweitzer referred his application to the MBPP for consideration. MBPP conducted a three-day public hearing on Beach's application. MBPP denied Beach's application on August 20, 2007.

¶13 Beach filed a petition for post-conviction relief on January 18, 2008, based in part on alleged newly discovered evidence. The State filed a motion to dismiss. The District Court denied Beach's petition on March 28, 2008, without conducting a hearing. The court's cursory order stated that Beach's petition was procedurally and time barred. The court further concluded that the cumulative evidence proffered by Beach failed to demonstrate

actual innocence in support of the fundamental miscarriage of justice exception to the time requirements. Beach appeals.

## STANDARD OF REVIEW

¶14    We review a district court's denial of a petition for post-conviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Heath v. State*, 2009 MT 7, ¶ 13, 348 Mont. 361, 202 P.3d 118. We review discretionary rulings in post-conviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, for an abuse of discretion. *Heath*, ¶ 13.

## DISCUSSION

¶15    *Whether the District Court properly ruled that Beach's petition for post-conviction relief was procedurally barred.*

¶16    The District Court failed to include in its order an analysis of why it deemed Beach's petition to be procedurally barred. Section 46-21-104(1)(c), MCA, provides the necessary elements of a properly filed petition for post-conviction relief. A defendant must "identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts." Section 46-21-104(1)(c), MCA. Mere conclusory allegations are insufficient to support the petition. *State v. Wright*, 2001 MT 282, ¶ 31, 307 Mont. 349, 42 P.3d 753. A defendant's affidavit, unsupported by evidence, also is insufficient to support a petition. *Williams v. State*, 2002 MT 189, ¶ 19, 311 Mont. 108, 53 P.3d 864.

4

¶17 Beach provided a nine page summary of the alleged newly discovered evidence and twenty-nine exhibits that illustrate this new evidence. Beach also provided a twenty-seven page memorandum in support of his petition. The State argues that regardless of whether Beach has satisfied § 46-21-104, MCA, he has failed to overcome the procedural bar on successive petitions set forth in § 46-21-105, MCA.

¶18 A second or subsequent petition must demonstrate good cause why the petition has asserted claims that were not raised in the original petition. Section 46-21-105, MCA; *State v. Root*, 2003 MT 28, ¶ 16, 314 Mont. 186, 64 P.3d 1035. Beach's 1995 petition failed to allege newly discovered evidence. This Court deemed that petition procedurally barred by res judicata and/or by the statutory five-year limitations period for filing such a petition. *Beach*, 275 Mont. at 375, 913 P.2d at 625.

¶19 Beach's current petition, by contrast, alleges newly discovered evidence that he claims became available recently only through the efforts of his defense team. Beach contends that he could not have raised the newly discovered evidence in his first petition. Nothing in the District Court's order indicates that the court implicitly found a lack of diligence on Beach's part in locating this newly discovered evidence. In light of this omission, we will grant Beach the benefit of the doubt as to whether he acted with sufficient alacrity in locating this newly discovered evidence to meet the requirements of § 46-21-105, MCA. Accordingly, we determine that Beach's petition for post-conviction relief is not procedurally barred by either § 46-21-104, MCA, or § 46-21-105, MCA.

5

¶20  *Whether the District Court properly ruled that Beach's petition for post-conviction relief was time barred.*

¶21  The District Court without analysis simply stated in its order that Beach's petition was time-barred. Section 46-21-102, MCA, governs the timeliness of petitions for post-conviction relief. The 1997 Montana legislature amended § 46-21-102, MCA, to allow "a petition for relief [to] be filed at any time within 1 year of the date that the conviction becomes final." The jurisdictional time limit is not absolute. The legislature included a statutory exception to the mandatory time limit for "[a] claim that alleges the existence of newly discovered evidence." Section 46-21-102(2), MCA; *Sanchez v. State*, 2004 MT 9, ¶ 10, 319 Mont. 226, 86 P.3d 1.

¶22  We have determined, however, that the 1997 amendments apply only to those convictions that became final 12 months before the effective date of April 24, 1997. *Hawkins v. Mahoney*, 1999 MT 82, ¶ 10, 294 Mont. 124, 979 P.2d 697; *State v. Charlo*, 2000 MT 192, ¶ 11, 300 Mont. 435, 4 P.3d 1201; *State v. Whitehorn*, 2002 MT 54, ¶ 44, 309 Mont. 63, 50 P.3d 121. We must evaluate the timeliness of Beach's petition pursuant to the pre-1997 amendments. *Hawkins*, ¶ 10.

¶23  The pre-1997 amendments allowed a petition for relief to be filed at any time within five years of the date of conviction. Section 46-21-102, MCA (1995). The pre-1997 amendments contained no statutory exception. We recognized a limited exception to the five-year statute of limitations when strict enforcement would result in a fundamental

miscarriage of justice. *State v. Redcrow*, 1999 MT 95, ¶ 33, 294 Mont. 252, 980 P.2d 622; *State v. Pope*, 2003 MT 330, ¶¶ 58-68, 318 Mont. 383, 80 P.3d 1232.

¶24 Beach's conviction became final in 1984. Beach filed his latest petition on January 18, 2008. Beach has filed his petition well beyond the five-year statutory limitation. In fact, this Court determined that Beach had filed his first petition for post-conviction relief in 1995 well after the statutory five-year limitations period had expired. *Beach*, 275 Mont. at 375, 913 P.2d at 625. Beach may escape the five-year statute of limitations only if he can satisfy the fundamental miscarriage of justice exception. *Redcrow*, ¶ 33. Beach must rely upon the fact that his allegedly newly discovered evidence satisfies the fundamental miscarriage of justice exception.

¶25 Beach's 1995 petition, of course, failed to allege newly discovered evidence. *Beach*, 275 Mont. at 375, 913 P.2d at 625. The State challenges whether Beach's newly discovered evidence provides anything "new" and that otherwise was not available to Beach at the time that he filed his first petition in 1995. The District Court held that the alleged newly discovered evidence proffered by Beach lacked a demonstration of actual innocence to support the fundamental miscarriage of justice exception. The court failed to discuss, however, the legal standard that it had applied.

¶26 The court's only reasoning as to why it denied Beach's petition relied on the prosecutor's actions in thoroughly reviewing the evidence and re-interviewing witnesses. The court relied upon the prosecutor's moral and ethical obligation to determine whether Beach was "truly innocent." Our system of justice depends on an independent judiciary

undertaking an independent evaluation of the arguments and claims presented by the parties before a court. The judiciary cannot abdicate its responsibility to undertake an independent evaluation based upon the court's deference to the State's perceived adherence to moral or ethical obligations.

¶27 We only can presume that the court agreed with the State's argument that Beach had failed to establish his "actual innocence" under the fundamental miscarriage of justice exception. The State argued that Beach had failed to establish a "miscarriage of justice" under the analysis suggested in *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867 (1995). We touched upon the miscarriage of justice standard in *Redcrow* and *Pope*.

¶28 In *Redcrow*, we agreed with the district court that Redcrow had not timely filed her petition for postconviction relief as required by § 46-21-102, MCA. *Redcrow*, ¶ 29. We further agreed that a "fundamental miscarriage of justice" triggered the limited exception to the five-year statute of limitations. *Redcrow*, ¶ 31. This Court noted that it never had defined clearly the scope of the "fundamental miscarriage of justice" exception and looked for guidance from *Schlup*. *Redcrow*, ¶ 33.

¶29 The Court in *Schlup* excused a procedural default when the petitioner showed that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327, 115 S. Ct. at 867. *Schlup* defines "actually innocent" as not merely a showing that a reasonable doubt exists in light of the new evidence, but rather that "no reasonable juror would have found the defendant guilty." *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868. The Court in *Schlup* emphasized that it was "not the district court's

8

independent judgment as to whether reasonable doubt exists that the standard addresses." *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868. The Court instead explained that the standard requires the district court "to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868.

¶30 The Court focused on the word "reasonable" in its formulation of the standard. The Court presumed that a "reasonable juror would consider fairly all of the evidence presented" and that such a reasonable juror "would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868. Thus, under the *Schlup* standard, a party seeking to meet the threshold requirement must persuade the district court that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868.

¶31 The Court in *Redcrow* recognized that the fundamental miscarriage of justice exception concerns actual, or substantive innocence, rather than legal, or procedural innocence. *Redcrow*, ¶ 33. The U.S. Supreme Court recognized this distinction in *Sawyer v. Whitley*, 505 U.S. 333, 112 S. Ct. 2514 (1992). The Court distinguished between "actual innocence" – the defendant's claim that he was innocent of the crime charged – and "legal innocence" claims involving allegations of procedural error or abuse. *Sawyer*, 505 U.S. at 339, 112 S. Ct. at 2519. The Court recognized that an interplay between "actual" and "legal" innocence claims could result in a petition for post-conviction relief falling within the "fundamental miscarriage of justice" exception to the general rule of *res judicata*. *Sawyer*,

505 U.S. at 339, 112 S. Ct. at 2518. The Court held that a showing of "actual innocence" required the petitioner to show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner guilty. *Sawyer*, 505 U.S. at 344, 112 S. Ct. at 2521.

¶32 This Court in *Redcrow* ultimately settled on the principle that a "fundamental miscarriage of justice arises only when a jury could find, in light of new evidence, that the defendant is actually innocent of the crime." *Redcrow*, ¶ 37. The Court rejected Redcrow's claim of actual innocence, however, in light of the fact that she had confessed to law enforcement that she had stabbed the victim and she had admitted to another jail inmate that she had killed the victim. *Redcrow*, ¶ 37. None of her claims of alleged ineffective assistance of counsel implicated the confession or the admission. *Redcrow*, ¶ 37. Redcrow failed to convince the Court that she could meet the standard of "actual innocence." *Redcrow*, ¶ 37.

¶33 The Court in *Pope* actually recognized a miscarriage of justice exception. Pope had submitted completed DNA evidence for the purpose of passing through the *Schlup* "actual innocence" gateway. *Pope*, ¶ 56. Pope also alleged constitutional violations associated with his trial. *Pope*, ¶ 38. The trial court determined that Pope had not proven sufficient facts to overcome the five-year statute of limitations. As a result, the trial court concluded that the five-year limitation contained in § 46-21-102, MCA, precluded it from considering Pope's alleged constitutional violations in his petition for post-conviction relief. *Pope*, ¶ 34.

¶34    This Court reversed. The fact that Pope had not presented the DNA evidence to the jury because it had not been available at the time of trial allowed Pope to pass through the *Schlup* actual innocence gateway. *Pope*, ¶ 56. Once having passed through the actual innocence gateway, the Court allowed Pope to pursue relief for his alleged constitutional violations through a petition for post-conviction relief that he had filed beyond the five-year limitation specified in § 46-21-102, MCA. *Pope*, ¶ 68. The State did not contest the fact that errors at Pope's trial rendered his conviction constitutionally infirm. *Pope*, ¶ 68.

¶35    This concession obviated the need to evaluate whether Pope's newly discovered evidence demonstrated his substantive actual innocence. The Court determined that the procedural errors at Pope's trial combined with his newly claimed evidence to establish a clear miscarriage of justice. *Pope*, ¶ 69. This Court did not analyze Pope's substantive innocence claims in light of the State's admission to the procedural errors at his trial. The Court vacated Pope's conviction and remanded the matter for a new trial. *Pope*, ¶ 70.

¶36    Beach's current petition relies on the fact that his newly discovered evidence establishes his actual innocence. Similar to the petitioner in *Pope*, Beach argues that this newly discovered evidence allows him to pass through the *Schlup* gateway. *Pope*, ¶ 69. Unlike the petitioner in *Pope*, however, Beach relies on this same newly discovered evidence to prove his actual innocence. This distinction raises the issue of how the District Court should evaluate Beach's alleged newly discovered evidence.

¶37    The Court had occasion in *State v. Clark*, 2005 MT 330, ¶ 34, 330 Mont. 8, 125 P.3d 1099, to expand upon how a trial court should evaluate claims of newly discovered evidence

11

in a case brought on direct appeal. The Court reasoned that the trial court must consider what impact, looking prospectively at a new trial with a new jury, that this new evidence may have on that new jury. *Clark*, ¶ 36. This framework guides a court in analyzing claims of newly discovered evidence.

¶38 To prevail on a motion for a new trial grounded on newly discovered evidence, the defendant must satisfy the following test:

> (1) the evidence must have been discovered since the defendant's trial;
> (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;
> (3) the evidence must be material to the issues at trial;
> (4) the evidence must be neither cumulative nor merely impeaching; and
> (5) the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.

*Clark*, ¶ 34.

¶39 The fifth element presents the most likely crux of any district court's evaluation of new trial motions based on newly discovered evidence. *Clark*, ¶ 36. The "reasonable probability" standard leaves it to the trial court to determine the weight and credibility of the new evidence. *Clark*, ¶ 36. The "reasonable probability" standard also leaves it to the trial court to consider what impact, looking prospectively at a new trial with a new jury, this new evidence may have on that new jury. *Clark*, ¶ 36.

¶40 In *Crosby v. State*, 2006 MT 155, 332 Mont. 460, 139 P.3d 832, we adopted this five-pronged test to evaluate claims of newly discovered evidence presented in a petition for post-conviction relief. *Crosby*, ¶ 19; *State v. Abe*, 2001 MT 260, ¶ 10, 307 Mont. 233, 37 P.3d 77. A key witness for the State recanted her testimony after the trial in *Crosby*. *Crosby*, ¶ 6. The

trial court erroneously concluded that a new trial would be granted only "when the trial judge is satisfied the recantation is true." *Crosby*, ¶ 21. We determined that the court erred when it improperly placed itself in the role of fact-finder. *Crosby*, ¶ 21.

¶41 The District Court's reliance in this case on the prosecutor's moral and ethical obligation improperly placed the *prosecutor* in the role of fact-finder. The court failed to analyze the truthfulness of the testimony. As noted in *Crosby*, once a petitioner who alleges newly discovered evidence has satisfied the five *Clark* factors, the trial court must leave determination of whether actually to believe the newly discovered evidence to the fact-finder on retrial. *Crosby*, ¶ 21. The trial court must analyze in the first instance, however, whether a reasonable probability exists that the newly discovered evidence would change the outcome at a new trial.

¶42 The Court in *Crosby* considered the petitioner's untimely petition under the newly discovered evidence exception in § 46-21-102(2), MCA. We must consider Beach's petition under the miscarriage of justice exception to the 1997 amendments. The State argues in its brief, however, that this Court has imposed an "actual innocence" standard on both the "newly discovered evidence" exception contained in the 1997 amendments to § 46-21-102(2), MCA, and the "miscarriage of justice" exception discussed in *Redcrow* and related cases. We agree with the State that both standards implicate "actual innocence," as opposed to "legal innocence." This conclusion nevertheless fails to resolve the question of how the court should evaluate the alleged newly discovered evidence in making its determination of whether the petitioner has demonstrated "actual innocence."

13

¶43 As the U.S. Supreme Court indicated in *Sawyer* and *Schlup*, the "actual innocence" inquiry may involve the interplay of substantive *and* procedural innocence claims. *Sawyer*, 505 U.S. at 336, 112 S. Ct. at 2517; *Schlup*, 513 U.S. at 316, 115 S. Ct. at 861. This Court recognized this nexus in *Pope*. Pope's substantive innocence claim – the DNA evidence – served as the vehicle that allowed Pope to navigate the "actual innocence" gateway. This successful navigation, in turn, allowed Pope to bring his procedural innocence claims – the alleged constitutional violations. *Pope*, ¶ 44. The State did not contest Pope's allegations of procedural error. As a result, the Court did not address the standards to be applied to substantive, as opposed to procedural, innocence claims. Beach brings both substantive and procedural claims in his petition for post-conviction relief. We must delineate the standard that applies to each.

¶44 A petitioner predicates a substantive "actual innocence" claim on the assertion that he did not commit the crime of which he has been convicted. *Pope*, ¶ 53. A purely substantive claim warrants the application of an "extraordinarily high" standard of review. *Schlup*, 513 U.S. at 316, 115 S. Ct. at 861 (quoting *Herrera v. Collins*, 506 U.S. 390, 426, 113 S. Ct. 853, 874 (1993)). Beach's petition contains both substantive and procedural innocence claims. The higher standard of review would apply to Beach's substantive claims if he successfully has navigated the "procedural gateway." *Schlup*, 513 U.S. at 316, 115 S. Ct. at 861. The analysis for Beach's substantive claims "must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence." *Schlup*, 513 U.S. at 328, 115 S. Ct. at 867-68. We conclude that Beach must show by clear and

convincing evidence that, but for a procedural error, no reasonable juror would have found him guilty of the offense in order for him to prevail on his substantive innocence claim. *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868.

¶45    Beach's procedural claims warrant the application of a different standard of proof. *Schlup*, 513 U.S. at 324, 115 S. Ct. at 865. The standard of proof should reflect the "relative importance attached to the ultimate decision." *Schlup*, 513 U.S. at 325, 115 S. Ct. at 866 (citation omitted). A substantive innocence claim, if successful, results in the petitioner's release. By contrast, a successful procedural claim results in a new trial, and justifies a different standard of proof. *Schlup*, 315 U.S. at 327, 115 S. Ct. at 867. The "reasonable probability" standard outlined in *Clark*, ¶ 34, strikes a rough equivalence with the notion that "a constitutional violation at trial has probably resulted in the conviction of one who is 'actually innocent.'" *Pope*, ¶ 46. This "reasonable probability" standard also comports with the *Schlup* standard that requires the petitioner to "establish, by a 'fair probability,' that the 'trier of the facts would have entertained a reasonable doubt of his guilt.'" *Schlup*, 513 U.S. at 322, 115 S. Ct. at 864 (citation omitted).

¶46    We recognize that *Clark* and *Redcrow* espouse forward looking tests that require a court to evaluate what a jury would do in a new trial. By contrast, *Schlup* seemingly contemplates a backward looking test that requires a court to assess how a reasonable jury "would have voted" if it had possessed the benefit of the newly discovered evidence. We nevertheless deem it appropriate under the facts of this case to have the District Court follow a modified version of the *Clark* test that incorporates the *Redcrow* and *Schlup* standards to

reflect the fact that Beach must establish a miscarriage of justice in order to escape the procedural bar.

¶47     The District Court first must evaluate whether the alleged new evidence presented by Beach constitutes actual "new" evidence as envisioned by the standards set forth in *Clark*. This initial evaluation first entails a review of whether the evidence has been discovered since the defendant's trial. *Clark*, ¶ 34. The court then must determine whether the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part. *Clark*, ¶ 34. The alleged newly discovered evidence presented by the petitioner must be material to the issues at trial and it must be neither cumulative nor merely impeaching. *Clark*, ¶ 34.

¶48     Only once the petitioner has cleared these hurdles should the District Court address the final question. The "reasonable probability" standard from *Clark* leaves it to the trial court to consider what impact, looking prospectively at a new trial with a new jury, the new evidence may have on that new jury. *Clark*, ¶ 36. We must modify this analysis to conform to the miscarriage of justice standard. As discussed in *Redcrow*, the court must evaluate whether a jury "could find, in light of the newly discovered evidence," that Beach actually is innocent of his crime. *Redcrow*, ¶ 37. The *Schlup* Court phrased the test as "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868. We determine that the standards explicated in *Redcrow* and *Schlup* adhere most closely to the notion of a miscarriage of justice.

16

¶49 *Whether the District Court properly denied Beach's petition for post-conviction relief without holding an evidentiary hearing.*

¶50 Section 46-21-104(1)(c), MCA, sets forth the procedural requirements for a petition for post-conviction relief. The State concedes that Beach has satisfied these requirements. A district court has discretion whether to dismiss a petition for post-conviction relief without holding an evidentiary hearing. *Heath*, ¶¶ 13, 16. The District Court nonetheless abused its discretion by denying Beach's petition without holding an evidentiary hearing in response to the State's concession and the factors discussed in this opinion.

## CONCLUSION

¶51 We remain unable to glean from the District Court's skeletal order its legal conclusions and the facts on which it based those legal conclusions that led it to deny Beach's petition for post-conviction relief. The District Court's order similarly leaves the Court unable to determine whether it applied the correct legal standard in evaluating Beach's petition for post-conviction relief. As a result, we remand Beach's petition to the District Court to conduct an evidentiary hearing on the newly discovered evidence alleged in Beach's petition. The court must evaluate whether Beach's alleged new evidence constitutes actual new evidence. The court shall apply a modified version of the five-prong *Clark* test and the *Schlup* "clear and convincing" standard to Beach's alleged newly discovered evidence to determine in the first instance whether Beach's petition establishes that a "jury could find, in light of the newly discovered evidence," that Beach actually is innocent of his crime. *Redcrow*, ¶ 37. The court must assess whether a jury, acting reasonably, would have voted

17

to find Beach guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868. The District Court shall provide a written order of its decision in accordance with the legal standards set forth in this opinion.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE