No. 01-550

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 189

ALAN WAYNE WILLIAMS,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Respondent.

APPEAL FROM:     District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable E. Wayne Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jon A. Oldenburg, Attorney at Law, Lewistown, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  April 11, 2002

Decided:  August 29, 2002

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 By Information filed in the District Court for the Tenth Judicial District in Fergus County, the Defendant, Alan Wayne Williams, was charged with felony criminal possession of drugs (methamphetamine), misdemeanor criminal possession of drugs (marijuana), and misdemeanor criminal possession of drug paraphernalia. Williams was convicted of all three offenses following a non-jury trial, and sentenced on March 23, 1999. On September 11, 2000, Williams filed a petition for postconviction relief based on numerous claims of ineffective assistance of counsel. Williams subsequently amended his petition to include two additional claims of ineffective assistance of counsel. The District Court denied Williams' petition for postconviction relief, and Williams appeals from the District Court's denial. We affirm the District Court to the extent that it addressed the issues raised by Williams, but remand to the District Court for further findings regarding those issues it has not addressed.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court erroneously decide the issues that it addressed?

¶4 2. Did the District Court inadequately address the additional issues raised in Williams' amended petition for postconviction relief?

FACTUAL AND PROCEDURAL BACKGROUND

¶5 On August 25, 1998, Jim Simonich, Alan Wayne William's probation officer, conducted a probationary search of Williams'

apartment based on a tip he had received from Williams' roommate, Laura Wilton. Wilton alleged that Williams was involved in drug activities. During the search, Simonich found a wooden box containing glass vials, baggies, a scrap of paper with residue, scissors, a razor, and tin foil with burned residue on it. The wooden box was in plain view in the apartment on top of a box of clothes that appeared ready to be moved.

¶6 Simonich had the items field-tested at the Lewistown Police Department. Officer Ed McLean tested a portion of residue in a glass vial and also a green leafy substance found in a glass case. The residue in the glass vial tested positive for methamphetamine, and the material in the glass case tested positive for THC, the illegal substance found in marijuana. The items were then sent to the State Crime Lab for further analysis. The State Crime Lab confirmed that the residue in the glass vial was methamphetamine, but found no THC on any of the items tested.

¶7 Based on the search and what was found, Williams was arrested. At the time of the arrest, Simonich also had Williams provide a urine sample. The urine sample was both "field tested" and sent to a prerelease lab in Great Falls, Montana. At trail, Simonich testified that the "field test" results were positive for THC and negative for methamphetamine. The prerelease lab independently tested Williams' urine sample, and found positive results for both THC and methamphetamine. According to the State, neither the prosecution nor the defense were provided the prerelease lab

results prior to trial. Nevertheless, at trial, Simonich mentioned those test results in his testimony.

¶8 The District Court appointed Carl G. DeBelly to represent Williams on or about August 27, 1998. By Information filed on September 1, 1998, Williams was charged with felony criminal possession of dangerous drugs (methamphetamine), misdemeanor criminal possession of dangerous drugs (marijuana), and misdemeanor possession of drug paraphernalia.

¶9 Williams' defense was based on his denial that he owned or possessed the drugs and the fact that others had an opportunity to be in the apartment and either leave or plant the drugs. Williams claimed that the wooden box did not belong to him and that he was in the process of moving out when Simonich conducted the search. Williams did admit, however, that he was in the apartment on the morning of August 25, 1998, just hours before the search, and that he stayed at the apartment three or four nights a week during that month of August. Williams' roommate, Laura Wilton, also admitted that she had access to the apartment, and that she had been in the apartment the night before the search.

¶10 On February 3, 1999, Williams was convicted of the charged offenses after a non-jury trial. On March 23, 1999, Williams was sentenced. Both the non-jury trial and the sentencing were presided over by the Honorable John R. Christensen. On April 15, 1999, DeBelly withdrew as Williams' attorney, and the District Court appointed attorney Jack R. Stone to replace DeBelly. Williams' direct appeal to this Court was withdrawn. However, he

4

subsequently filed a petition for postconviction relief on September 11, 2000, and asserted numerous claims that his trial counsel, DeBelly, had been ineffective. An evidentiary hearing was held before the Honorable E. Wayne Phillips to consider evidence in support of Williams' petition on January 18, 2001. Following the hearing, the District Court allowed Williams to amend his petition for postconviction relief to include two additional ineffective assistance of counsel claims.

¶11 On May 17, 2001, the District Court denied Williams' petition for postconviction relief. The Court determined that two of Williams' claims were procedurally barred and that the remaining ineffective assistance of counsel claims lacked merit. Following the District Court's denial, Jack R. Stone withdrew as Williams' attorney. Acting pro se, Williams filed a notice of appeal on May 28, 2001, and requested that appellate counsel be appointed. Attorney Jon A. Oldenburg was appointed for purposes of this appeal. On appeal, Williams contends that the District Court erred when it denied his petition for postconviction relief and when it failed to address the additional ineffective assistance claims raised in his amended petition.

STANDARD OF REVIEW

¶12 The standard of review of a district court's denial of a petition for postconviction relief is whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Hanson*, 1999 MT 226, ¶ 9, 296 Mont. 82, ¶ 9, 988 P.2d 299, ¶ 9.

¶13 In considering ineffective assistance of counsel claims in postconviction proceedings, we apply the two-part test set forth by the United State Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20. The two-part test requires the defendant to show that his counsel's performance was deficient, or fails to meet an objective standard of reasonableness, and that his counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Dawson*, ¶ 20; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. We presume that counsel has rendered adequate assistance and has made all significant decisions in the exercise of his or her reasonable professional judgment. *State v. Weaver*, 2001 MT 115, ¶ 12, 305 Mont. 315, ¶ 12, 28 P.3d 451, ¶ 12.

ISSUE 1

¶14 Did the District Court erroneously decide the issues that it addressed?

¶15 Williams' petition for postconviction relief was based on his contention that he received ineffective assistance of counsel before, during, and after trial. Specifically, Williams alleged that his trial counsel: (1) failed to conduct proper discovery; (2) failed to obtain and call certain witnesses necessary for his defense to testify; (3) failed to properly question witnesses; (4) conducted inadequate trial preparation; (5) allowed his personal problems to detract from his representation; (6) failed to substitute the trial judge when requested to do so; and (7) failed

6

to call necessary and beneficial witnesses at Williams' sentencing hearing. The final two claims were not included in Williams' original petition, but were allowed by the District Court in the amended petition. As relief, Williams requests this Court to order a new trial.

¶16 In response, the State contends that the District Court's conclusion that Williams' trial counsel was not ineffective was fully supported by the evidence. According to the State, Williams' trial counsel made reasonable efforts to contact witnesses, formulated sound trial strategy, and employed that trial strategy effectively through the witnesses he presented. Furthermore, the State asserts that Williams' other claims that his counsel lacked preparedness were either unfounded or did not result in prejudice.

¶17 Williams first contends that his trial counsel failed to contact, discover, and prepare witnesses that would have been beneficial to his defense. Specifically, Williams contends that his trial counsel should have presented the testimony of two witnesses, one of whom was an unnamed man who was a neighbor of Williams, and the other was "Mr. Bruski," who purportedly had been in Williams' apartment the night before the search. Because Williams' defense was based on who had access to the apartment, the ownership and possession of the drugs, and who had an opportunity to have been in the apartment to either leave or plant the drugs, Williams contends that those witnesses would have been beneficial to his defense, and that his trial counsel's failure to find and call those witnesses constitutes ineffective assistance of counsel.

7

We conclude that ineffective assistance of counsel on that basis was not established.

¶18 Williams contends that he awoke the unnamed neighbor at 3:00 a.m. on the morning of August 25, 1998, after discovering that his apartment had been broken into. According to Williams, the unnamed neighbor would have been able to show that there had been other persons in the apartment other than Williams. However, despite the fact that Williams could not provide DeBelly with a name or physical description of the individual, the record establishes that DeBelly went to Williams' apartment house and knocked on doors in an attempt to find the individual. He testified at the evidentiary hearing as follows:

Q: Did you go up to the TV Appliance Apartments to try to find this unknown person?

A: Yes, I did.

Q: Did you inquire, knock on doors?

A: I knocked on doors. I asked people if they knew an Alan Williams. If they said no I said, well, maybe – then I would physically describe Mr. Williams as being rather short and thin with dark hair and a moustache at that time, and they said, well, yes, we know who you are talking about, but he didn't – he hadn't come and knock on my door. I have no idea – the – the persons or people renting these apartments at this particular time kind of came and went an awful lot. I – I am not sure exactly what Mr. Erlandson's policies are right now, but – so I

8

am not even sure if during the time that I spent there knocking on doors if the person that Mr. Williams claims to have been there was even in TV Appliance Apartments at the time that I was making my inquiries. However, I did go up there and attempt to locate someone.

We are satisfied, based on the foregoing testimony, that Williams' trial counsel made a reasonable effort to locate the unnamed person, that his performance was not deficient, and that, therefore, Williams has failed to meet the first part of the *Strickland* analysis based on this allegation.

¶19 As for "Mr. Bruski," Williams contends that Bruski should have been called as an adverse witness to establish that he was in the apartment with Laura Wilton on the night before the search was conducted. However, it is unclear from the record what "Mr. Bruski" would have established by his testimony, and how his absence actually prejudiced Williams. The only testimony regarding "Mr. Bruski," referred to in the transcript as "Burski," was as follows:

> Q: Now, even though he didn't testify his affidavit talks about and the memorandum talks about Jim Burski.
>
> A: Correct.
>
> Q: Did you talk to Mr. Burski?
> A: Only after trial.
>
> Q: Okay, and, in fact, information from Laura Wilton hadn't even come out until the time of trial about possibly Burski's involvement; is that correct?

9

          A:    Correct.   In fact, she had misled me I guess I
                would say in an earlier conversation that I had
                with her concerning her statement.

The only other evidence in support of Williams' contention that "Mr. Bruski" was a critical witness to Williams' defense was Williams' affidavit.   However, we have stated in the past that conclusory allegations in a self-serving affidavit, unsupported by any evidence, are insufficient to establish a claim for postconviction relief.   *State v. Wright*, 2001 MT 282, ¶ 31, 307 Mont. 349, ¶ 31, 42 P.3d 753, ¶ 31.   Furthermore, if Williams' intent was to show that others had been in the apartment the night before the search, that fact had already been established.   Laura Wilton readily admitted that she had been in the apartment the night before the search, and it follows that others could have been let into the apartment while she was there.   Therefore, we conclude that failure to call "Mr. Bruski" as a witness did not establish ineffective assistance of counsel.

¶20  Williams also contended that his trial counsel should have known of and objected to the introduction of his urinalysis test results.   After Williams was arrested, his urine was tested first in a "field test" conducted by Simonich, then by a prerelease lab in Great Falls.   The field test was conducted by placing three drops of Williams' urine on a small card, which will indicate either positive or negative for certain substances.   DeBelly made a tactical decision to attack the weight of the evidence given his reasonable interpretation that the field test was admissible. Although neither the State nor DeBelly were provided with the test

10

results from the prerelease lab prior to trial, Simonich introduced the evidence in his testimony. DeBelly did not object to this evidence. However, the District Court did not address these evidentiary issues based on its understanding that they were waived because they were not raised on appeal. On appeal from the postconviction order, Williams' counsel concedes that was correct. Therefore, we will not address whether failure to object to the evidence was ineffective.

¶21 The final issue addressed by the District Court was Williams' contention that DeBelly's overall emotional state adversely affected DeBelly's representation of Williams. Williams asserts that DeBelly was distracted, stressed, and depressed because of his wife's medical problems, and that he often spoke of that depression in visits with Williams.

¶22 In its order, the District Court addressed Williams' claim, and found:

> Not surprisingly, Attorney DeBelly disputed the Petitioner's argument that he was suffering from significant depression from family matters or that it affected his representation of the Defendant at his trial and sentencing hearing. Mr. DeBelly testified that the precipitating event in his family had occurred some seven months to one year prior to his appointment as attorney for the Petitioner. . . .
> The Court finds Mr. Williams not credible on this particular question of poor representation due to family stress and, while Mr. DeBelly acknowledged some emotional difficulties, the Court finds credible his contention that he represented a very demanding and undisciplined client. In relationship to the second prong of Strickland, the Petitioner has failed to show where the depression or stress-related action or inaction on the part of Mr. DeBelly prejudiced his trial or sentencing.

The record is clear that the injuries to DeBelly's wife occurred on January 14, 1998, that DeBelly did not practice law between the period of mid-January to mid-March of 1998, and that DeBelly was not appointed to represent Williams until August 27, 1998. When asked directly whether his personal problems negatively affected his representation of Williams, DeBelly stated, "No, no. By the time I had – by the time I had returned to practice full time I had determined that psychologically and physically I was capable of resuming my practice." After review of the record, we are left unconvinced that, as a result of DeBelly's personal problems, he provided ineffective representation. We conclude that those findings made by the District Court regarding DeBelly's assistance as counsel were not clearly erroneous and that the District Court's conclusions of law were correct.

## ISSUE 2

¶23 Did the District Court inadequately address the additional issues raised in Williams' amended petition for postconviction relief?

¶24 Williams contends that this case should be remanded to the District Court because the District Court's order which denied the petition for postconviction relief failed to address all of the issues raised. The District Court did not make specific findings regarding his allegations that his attorney failed to substitute the trial judge despite being requested to do so and that his attorney failed to call important character witnesses to testify at Williams' sentencing hearing. Those are the two issues that were

12

added by Williams' amended petition for postconviction relief. As relief, Williams requests that this Court remand the amended claims to the District Court for further consideration and findings.

¶25 The State contends that a remand for additional findings is unnecessary. Based on the doctrine of implied findings, the State asserts that the findings made by the District Court imply that relief should also be denied on those additional bases.

¶26 However, the doctrine of implied findings is not applicable to this case. The doctrine of implied findings provides that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied if supported by the evidence. *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985). Here, however, the findings enumerated in the District Court's order were not general in nature, but specific to the claims raised in Williams' original petition for postconviction relief. In contrast, the additional issues raised in Williams' amended petition were not addressed. Therefore, it is unclear, based on the District Court's order, whether the District Court even considered Williams' additional claims.

¶27 Findings are sufficient if they dispose of the material issues. *Northern Plains Resource Council v. Board of Natural Resources and Conservation* (1979), 181 Mont. 500, 512, 594 P.2d 297, 304. We conclude that Williams was entitled to have the additional issues he raised in his amended petition independently considered.

13

¶28    Accordingly, we affirm the District Court's resolution of those issues it addressed,  but remand to the District Court for further findings on the additional issues raised by Williams in his amended petition for postconviction relief.

                              /S/ TERRY N. TRIEWEILER

We Concur:


/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE