*368 JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Cody Marble appeals the Fourth Judicial District Court’s denial of his petition for postconviction relief (PCR). This case has a lengthy history. In 2002, Marble was convicted of sexual intercourse without consent. The victim, then thirteen-year-old Robert Thomas, testified at Marble’s trial that Marble forcibly engaged in anal sexual intercourse with him in the shower at the Missoula County Detention Center where both boys were temporary inmates for juvenile offenses. In 2010, Thomas recanted his accusations in writing. Based upon those recantations, Marble petitioned for postconviction relief seeking, among other things, a new trial. The District Court denied the petition. Marble appeals. We reverse the order of the District Court and remand for proceedings in accordance with this Opinion.
ISSUES
¶2 We restate the issues before the Court as follows:
¶3 Did the District Court err in predicating its decision upon the concurring opinion in State v. Beach, 2013 MT 130, 370 Mont. 163, 302 P.3d 47 (Beach II[1])?
¶4 If reliance on the Beach II concurrence was error, what test must a district court employ in reviewing a petition for postconviction relief based upon newly discovered evidence and filed within one year of discovery of such evidence?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 In 2002, seventeen-year-old Cody Marble spent several weeks in Pod C of the Missoula County Detention Center (MCDC) with seven other boys, aged 13 to 18. According to MCDC taped footage and eyewitness testimony, on the evening of March 10,2002, between 9:00 p.m. and 9:45 p.m., while at least four other pod mates were gathered in the common area just outside the showers, Thomas and Marble voluntarily entered a shower stall together. Approximately ten minutes later, they left the shower area and Thomas went to his cell just prior to the 10:00 p.m. lights out deadline. Thomas later claimed that during the ten minutes he was in the shower stall with Marble, Marble told him to remove his pants and grab his ankles. Thomas claimed that after being threatened if he refused, Thomas complied at which time *369 Marble had anal sexual intercourse without consent with Thomas. Thomas asserts that as they left the shower area, Marble threatened him with bodily harm again and then instructed him to tell the others that it was just a joke and that Marble had not sodomized him. Thomas did not report the alleged assault to the MCDC staff.
¶6 OnMarch 13,bothboyswerereleasedfromMCDCandwenthome to their respective families. On March 21,2002, Marble was charged with felony sexual intercourse without consent after other Pod C inmates reported to the Detention Center authorities that Marble had raped Thomas in the showers on March 10. Later, those same inmates and Thomas testified against Marble at trial. Marble asserted the rape never occurred and that he was the victim of a malicious set-up by other boys in the pod, including Thomas. On November 22,2002, a jury found Marble guilty. In January2004, Marble was sentenced to twenty years, with fifteen suspended.
¶7 Marble has consistently maintained his innocence since he was accused, and his case has been before this Court on multiple occasions. See, e.g., State v. Marble, 2005 MT 208, 328 Mont. 223, 119 P.3d 88, Marble v. State, 2007 MT 98, 337 Mont. 99, 169 P.3d 1148, and State v. Marble, 2010 MT 210N.[2]
¶8 In the late fall of2009, Marble contacted the Montana Innocence Project. Marble had heard rumors that Thomas, who was serving time for statutory rape, was telling other inmates that Marble did not rape him. Marble asked the Innocence Project to contact Thomas and investigate. The Innocence Project interviewed Thomas approximately four times between December 23, 2009, and July 2010. Thomas verbally recanted his rape claim on each occasion but initially refused to provide a written statement.
¶9 In July 2010, Thomas handwrote the following recantation:
8 or so years ago when I was 13 at Missoula County Juvenile Detention Facility I was sitting at a table in the dayroom. There were three other people at the table. They told me to say that Cody Marble raped me. But this did not happen. And now today I want to come out and let it be known. I’m coming forward now because I’m in prison on a sex crime and know what it is like. So I don’t want him to be charged with one when innocent. When I was in jail, I was the youngest & smallest and I was pressured into going along with it.
*370 Thomas provided this letter to attorneys with the Montana Innocence Project. A few days later, an Innocence Project lawyer returned with a typed letter of recantation for Thomas’s signature. This letter was more detailed than Thomas’s earlier handwritten note. It unequivocally stated that the rape did not occur and that Thomas had participated in a conspiracy against Marble. Thomas made a handwritten correction to one of the statements and initialed and dated the correction. He then signed and dated the typed letter and returned it to the Innocence Project lawyer.
¶10 Based upon these letters, on December 14, 2010, Marble filed a petition for postconviction relief, the denial of which is currently on review before us. The District Court ordered that Thomas be deposed. At both his deposition in January 2012 and later at the October 24, 2012 PCR hearing, Thomas testified that the rape did occur as he claimed in 2002 and that because the Innocence Project lawyers called him a liar, he recanted and told them what they wanted to hear. He also testified that he thought the Innocence Project might help him with his legal problems if he cooperated with them.
¶11 In November 2013, the District Court denied Marble’s petition. The court predicated its decision upon the concurring opinion inBeach II and decided that Thomas’s recantation did not “affirmatively and unquestionably establish” that Marble was innocent and therefore his petition for PCR failed. Marble filed a timely notice of appeal.
¶12 On April 7,2014, while on parole, Thomas had an encounter with the Havre police that resulted in a 21-hour standoff ending with Thomas’s suicide.
STANDARD OF REVIEW
¶13 “We review a district court’s denial of a petition for post-conviction relief to determine whether the court’s findings of fact are clearly erroneous and whether its conclusions of law are correct.” Beach v. State, 2009 MT 398, ¶ 14, 353 Mont. 411, 220 P.3d 667 {citing Heath v. State, 2009 MT 7, ¶ 13, 348 Mont. 361, 202 P.3d 118). “We review discretionary rulings in post-conviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, for an abuse of discretion.” Beach, ¶ 14; Hamilton v. State, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588.
DISCUSSION
¶14 Did the District Court err in predicating its decision upon the concurring opinion in State v. Beach, 2013 MT 130, 370 Mont. 163, 302 *371 P.3d 47 (Beach II)?
¶15 Marble’s petition for postconviction relief was brought under § 46-21-102(2), MCA. In its entirety § 46-21-102, MCA, provides:
(1) Except as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at any time within 1 year of the date that the conviction becomes final. A conviction becomes final for purposes of this chapter when:
(a) the time for appeal to the Montana supreme court expires;
(b) if an appeal is taken to the Montana supreme court, the time for petitioning the United States supreme court for review expires; or
(c) if review is sought in the United States supreme court, on the date that that court issues its final order in the case.
(2) A claim that alleges the existence of newly discovered evidence that, if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted, may be raised in a petition filed within 1 year of the date on which the conviction becomes final or the date on which the petitioner discovers, or reasonably should have discovered, the existence of the evidence, whichever is later.
¶16 The State does not argue that Marble’s petition was untimely, nor does it assert that Marble’s awareness of inmate rumors triggered the one-year clock to begin running. Marble’s representative — the Innocence Project — heard from Thomas for the first time on December 23,2009, that the rape had not occurred. Marble filed his petition for PCR on December 14,2010. Consequently, Marble’s petition was not time-barred.
¶17 Marble asserted in the District Court that the newly discovered evidence consisting of Thomas’s repeated recantations entitled him to a new trial. He maintained that his PCR petition should be analyzed under § 46-21-102(2), MCA, and State v. Clark, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099. The State argued that his claim for PCR relief should be treated as a substantive claim of actual innocence in accordance with the analysis set forth in the concurring opinion in Beach II, and should not be premised on Clark.
¶18 The District Court adopted the State’s argument and conducted a lengthy analysis of Marble’s claim of innocence under the Beach II concurrence. The court concluded that in making a substantive claim of innocence under § 46-21-102(2), MCA, Marble must not only raise doubt about his guilt, but must affirmatively and unquestionably establish his innocence. Consistent with its reading of the Beach II *372 concurrence, the District Court rejected the contention that the five-part test articulated by this Court in Clark should figure in the court’s analysis. Marble argues on appeal that the District Court erred in applying the test set forth in the Beach II concurrence to his PCR petition and rejecting the application of the Clark factors.
¶19 In Beach’s 2008 petition for PCR, Beach claimed that newly discovered evidence established his “actual innocence.” The district court reviewed the new evidence and determined that it was sufficient to warrant a new trial. The State appealed and this Court reversed the district court, holding that, as part of its analysis the district court was required to consider the evidence presented at Beach’s original trial together with Beach’s new evidence. We concluded that the district court erroneously reviewed the new evidence only. Beach II, ¶ 79. After considering both old and new evidence on appeal, we concluded that Beach’s newly discovered evidence did not displace the original trial evidence and that the new evidence was unreliable and failed to establish Beach’s actual innocence. Beach II, ¶ 80.
¶20 The Beach II concurrence revisited the test for determining postconviction claims of “actual innocence” as set forth in Beach I and applied in Beach II. Beach II, ¶ 81 (McKinnon, J., concurring). Concluding that the Beach I test confused the applicable law, the concurrence reviewed the standards for both substantive and procedural innocence claims and set forth revised standards for each. The concurrence also addressed application of § 46-21-102(2), MCA, to postconviction cases and suggested that the statute was a codification of the requirements for a substantive claim of actual innocence, requiring a petitioner to “affirmatively and unquestionably establish his innocence, based upon reliable new evidence discovered within the twelve months preceding the filing of his petition and in light of the proof of his guilt at tried.” Beach II, ¶ 131.
¶21 As indicated, Marble argues that the District Court should have analyzed his petition under the five-prong Clark test rather than the Beach II concurrence. In Clark, we reviewed a district court’s denial of Clark’s motion for a new trial (as opposed to a PCR petition). In 2003, Clark was convicted of sexually assaulting his stepdaughter. Shortly after the trial, the stepdaughter recanted much of her damning testimony. Clark moved for a new trial asserting that the recantation constituted new evidence. The district court denied his motion and several months later sentenced him and entered a written judgment. Clark, ¶¶ 13-15.
¶22 On appeal, we announced that the following test would be applied *373 to motions for new trial predicated on newly discovered evidence:
To prevail on a motion for a new trial grounded on newly discovered evidence, the defendant must satisfy a five-part test:
(1) The evidence must have been discovered since the defendant’s trial;
(2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant’s part;
(3) the evidence must be material to the issues at trial;
(4) the evidence must be neither cumulative nor merely impeaching; and
(5) the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.
Clark, ¶ 34. We then remanded Clark’s motion to the district court for reconsideration in accordance with the five-part test. Clark, ¶ 42.
¶23 Several months after Clark was decided, Crosby v. State, 2006 MT 155, 332 Mont. 460, 139 P.3d 832, came before the Court. In 1996, Crosby was convicted of sexual intercourse without consent. The victim, Crosby’s then ten-year-old daughter, recanted her testimony in 2003. Crosby, ¶ 5. Crosby filed a petition for postconviction relief alleging that his daughter’s recantation constituted new evidence. Crosby, ¶ 6. Following a PCR hearing, the district court denied Crosby’s motion. Crosby, ¶¶ 7-8. On appeal, we concluded that the Clark test, originally developed to address a motion for a new trial, should apply to a petition for postconviction relief based upon newly discovered evidence. Crosby, ¶ 20. We reversed and remanded Crosby’s case to the district court with instructions to apply the Clark test to determine whether Crosby was entitled to postconviction relief and a new trial. Crosby, ¶ 25. Since we decided Crosby, we have applied the Clark test in analyzing claims for postconviction relief based upon newly discovered evidence in two cases: DuBray v. State, 2008 MT 121, 342 Mont. 520, 182 P.3d 753 and State v. Tyler, 2009 MT 75, 349 Mont. 461, 204 P.3d 685.
¶24 Because we held in Crosby that the Clark test should apply in PCR cases, Marble argues the Clark test should likewise apply to his postconviction relief claim. The State counters, however, that applying Clark to claims for postconviction relief is incompatible with the exacting language of § 46-21-102(2), MCA, which allows a postconviction claim based upon newly discovered evidence, provided that the claim, “if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted.” Section 46-21-102(2), *374 MCA. The State points out that, by contrast, the fifth Clark factor requires only a finding that “a new trial has a reasonable probability of resulting in a different outcome.” Clark, ¶ 34.
¶25 At oral argument, the State maintained that the disparity between the proof required under the PCR statute and that required by the fifth factor of the Clark test is justified in light of the fact that a PCR petitioner is saddled with a presumption of guilt, whereas a judgment of conviction has not yet been entered against the petitioner who files a motion for new trial following a verdict or finding of guilty but before the entry of a judgment of conviction. Thus, it argues, the test to be applied to PCR claims premised upon newly discovered evidence should require a more strenuous level of proof than that applied to a petitioner against whom a judgment of conviction has not yet been entered.
¶26 A defendant who has been convicted by a court or juiy of a crime but against whom a final judgment of conviction and sentence has not yet been entered has a brief window of time within which to file a motion for new trial. Section 46-16-702(2), MCA, requires a defendant seeking a new trial to do so within 30 days following the verdict or finding of guilty. This window of time invariably closes before the imposition of a judgment of conviction, given the statutory requirements of a presentence investigation, preparation of a report, and the scheduling and conduct of the sentencing hearing. Thus, as the State posits, a defendant seeking a new trial will do so before a final judgment of conviction and sentencing has been entered.
¶27 Section 46-16-701, MCA, provides that “[t]he granting of a new trial places the parties in the same position as if there had been no trial.” This can occur because there is at that point no judgment of conviction to overturn. By contrast, a postconviction relief petitioner seeks relief well after his conviction has become final. Section 46-21-102(l)(a)-(c), MCA.
¶28 We agree with the State’s argument. Although there is a paucity of case law on the topic, it stands to reason that a PCR petitioner is presumed guilty following the date upon which his conviction has become final, while a defendant who has timely requested a new trial and has not yet had a judgment of conviction and sentence entered against him does not yet carry with him the presumption of guilt and the associated burdens that accompany a final judgment of conviction.
¶29 Because the PCR petitioner is presumed guilty following the entry of a judgment of conviction, his burden when seeking postconviction relief based upon newly discovered evidence should be *375 greater than that imposed upon a petitioner seeking a new trial under § 46-16-702, MCA. Our conclusion here is underscored by the precision of the language of § 46-21-102(2), MCA, quoted above. Moreover, we conclude we have erred in equating a motion for new trial with a postconviction relief claim based upon newly discovered evidence because, while a motion for new trial does — by definition — contemplate a new trial, postconviction proceedings are in no way tethered to such relief. An examination of the postconviction relief statutes illustrates this point.
¶30 Section 46-21-201, MCA, describes the proceedings to be undertaken upon the filing of a PCR petition. Unless the petition and the case records conclusively show that the petitioner is not entitled to relief, the court shall cause notice of the petition to be sent to the county attorney and the attorney general, who can then determine whether to respond to the petition. “Following its review of the responsive pleading, the court may dismiss the petition as a matter of law for failure to state a claim for relief or it may proceed to determine the issue.” Section 46-21-201(l)(a), MCA. If the court determines that a hearing is required, or if the interests of justice require, it can order the office of the state public defender to assign counsel for a qualifying petitioner. Section 46-21-201(2), MCA. Thereafter, the court may for good cause grant either party leave to use discovery procedures; it may also receive proof of affidavits, depositions, oral testimony, or other evidence, and may order the petitioner brought before the court for hearing. Section 46-21-201(4) and (5), MCA. Finally, if the court finds in favor of the petitioner, “it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings and any supplementary orders as to reassignment, retrial, custody, bail, or discharge that may be necessary and proper. If the court finds for the prosecution, the petition must be dismissed.” Section 46-21-201(6), MCA.
¶31 The foregoing statutory provisions illustrate that a court entertaining a petition for postconviction relief has multiple arrows in its quiver. While a court may order a new trial, it clearly has the statutory right to dismiss the petition before or after briefing or proceed to “determine the issue” with or without a hearing. A request for a new trial in a petition for postconviction relief based upon newly discovered evidence, while permissible, does not recast a PCR proceeding as a petition for a new trial, nor does it change or limit the options available to the district court. We therefore erred in tying a PCR court to the Clark test, and in particular to factor five of the Clark test, which permits a defendant “[t]o prevail on a motion for a new trial *376 grounded on newly discovered evidence” where the evidence indicates “that a new trial has a reasonable probability of resulting in a different outcome.” Crosby, ¶ 19. This test is inconsistent with the standard set forth in § 46-21-102(2), MCA, and undercuts the wide discretion available to a district court considering a PCR petition under § 46-21-201, MCA. Accordingly, we hereby overrule Crosby, DuBray, and Tyler to the extent that they apply the fifth factor of the new trial Clark test to a petition for postconviction relief that is based upon newly discovered evidence.
¶32 We must next determine whether the District Court erred in predicating its decision on the Beach II concurring opinion, and if so, what test should be applied to petitions for postconviction relief premised upon newly discovered evidence. We start with the proposition that newly discovered evidence can take varying forms. The Beach II concurrence concludes at ¶ 131 that a petitioner seeking relief under § 46-21-102(2), MCA, must “affirmatively and unquestionably establish his innocence, based on reliable new evidence....” While this test may be well-suited to exonerating evidence that is scientific and absolute in nature, such as DNA, it is not workable in situations in which the newly discovered evidence is of a different type, such as perjured or new alibi evidence, a confession by a third-party, or — as here — recantation evidence. Powerful new evidence of this type could certainly establish that the defendant did not commit the crime of which he was convicted, but it will not, standing alone, “unquestionably establish his innocence.” Rather, as § 46-21-102(2), MCA, commands, the new evidence must be “proved and viewed in light of the evidence as a whole.” As Marble argues, if a petitioner is able to unquestionably establish his innocence through new evidence, there would be no reason to compare the new evidence to the proof of guilt at trial. Moreover, such a rigid test fails to take account of the above-noted provisions of the PCR statutes, which allow a district court to order briefing, further discovery, and/or a new trial. These statutory options allow a court to explore whether the petitioner can establish his innocence, and are inconsistent with the extraordinarily high standard set by the Beach II concurrence. We accordingly conclude that the test announced in the Beach II concurrence, insofar as it requires a petitioner to “affirmatively and unquestionably establish his innocence, based upon reliable new evidence,” is not suited to the quantum of proof required of a postconviction relief petitioner seeking relief under § 46-21-102(2), MCA, and we repudiate ¶ 131 of the concurrence. We hold therefore that the District Court’s conclusion of law applying the Beach II concurrence to the denial of Marble’s postconviction petition *377 was incorrect.
¶33 The Dissent maintains that we err in refusing to apply the principles articulated in Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851 (1995), as explained in Justice McKinnon’s Beach II concurrence. We disagree. The Beach II concurrence instructs that a Schlup petitioner must allege the occurrence of a constitutional violation at his first trial coupled with the presentation of new evidence of innocence. Beach II, ¶ 96. As illustrated in ¶ 54 and the accompanying footnote of Justice McKinnon’s Concurrence and Dissent, in each of our cases in which Schlup was invoked, the defendant alleged the occurrence of a constitutional error during his first trial, such as improper instructions to the jury or ineffective assistance of trial counsel. Marble does not allege that a constitutional violation occurred at his first trial; therefore, Schlup is not applicable. We proceed to determine what test should be applied to Marble’s petition.
¶34 What test must a district court employ in reviewing a petition for postconviction relief based upon newly discovered evidence and filed within one year of discovery of such evidence?
¶35 Section46-21-102(2), MCA, provides that an allegation that newly discovered evidence, “if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted” may be raised in a postconviction petition. The statute merely allows the filing of the petition; it does not in any way define or circumscribe whether the proof must be made to the district court, whether the petitioner must meet a certain threshold before the court can consider expanding the proceedings to include a hearing or a new trial, or whether such proof must be made on retrial. As noted, the implementing provisions set forth at § 46-21-201, MCA, likewise do not delineate how and to whom the proof must be made, and instead accord the court multiple options for how it may proceed.
¶36 In construing a statute, it is incumbent upon the court to “declare what is in terms or in substance contained therein, not to insert what has been omitted ... .” Section 1-2-101, MCA. The wide range of alternative proceedings set forth in § 46-21-201, MCA, reflect a legislative intent to place the method of resolving a petition for postconviction relief in the hands of the district court. We therefore conclude that a district court presented with a postconviction petition based upon newly discovered evidence shall utilize the very test set forth in § 46-21-102, MCA. It shall determine whether the “newly discovered evidence..., if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the *378 criminal conduct” for which he or she was convicted. In making this determination, a district court may seek guidance from our case law addressing various forms of newly discovered evidence, such as our precedent with respect to recantations, whether set forth in a case involving a motion for new trial or one addressing a PCR petition. See, e.g., Clark and Crosby. While we conclude herein that we erred in applying the fifth factor of the Clark new trial test to a PCR petition predicated upon newly discovered evidence, the first four factors of the Clark test (see ¶ 21) also remain a viable resource when determining whether the newly discovered evidence should be considered.
¶37 It will be up to the district court to determine within the options provided in § 46-21-201, MCA, whether the proof and evidence will be weighed by the court itself, whether discovery and a hearing should be conducted, whether the matter should be remanded for a new trial, and even whether the defendant should be released on bail or discharged. And if the court finds for the prosecution, the petition may be dismissed. Section 46-21-201(4) through (6), MCA. On appeal, we will review the court’s findings of fact for clear error and its conclusions of law for correctness, and will review discretionary rulings for an abuse of discretion. Hamilton, ¶ 7. It will be incumbent upon the court — however it elects to conduct the postconviction proceedings — to issue an order setting forth the facts and legal rationale supporting its decision.
¶38 The statutory test we announce today does not run afoul of our postconviction relief precedent. This Court has reviewed on appeal literally hundreds of district court dispositions of petitions for postconviction relief, many by way of memorandum opinion. While we have on occasion reversed the district court’s denial of a petition for postconviction relief and remanded for an evidentiary hearing (see Heath, ¶ 27, in which we remanded for a hearing in view of the “unique circumstances” occasioned by an IAC claim involving trial counsel who had since died), we have by and large declined to dictate to the district court which of the many statutory alternatives it should utilize when considering the merits of a postconviction petition. The constant in our decisions is the requirement that a postconviction petition must “identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts.” Section46-21-104(lXc), MCA. We have held that “[m]ere conclusory allegations are insufficient to support the petition.” Beach, ¶ 16; Hamilton, ¶ 10. We have also reaffirmed the statutory right of the district court to dismiss a PCR *379 petition without ordering a response if the petition and records “conclusively show that the petitioner is not entitled to relief” as stated in § 46-21-201(l)(a), MCA, and the court’s right to dismiss a petition without holding a hearing if the petition fails to satisfy the procedural threshold set forth in § 46-21-104(l)(c), MCA. Hamilton, ¶¶ 10-11. Otherwise, a court is free to invoke any or all of the procedural tools at its disposal by virtue of the language of § 46-21-201, MCA, when determining the disposition of a petition for postconviction relief predicated upon newly discovered evidence.
CONCLUSION
¶39 For the foregoing reasons, we conclude that the District Court erred in grounding its rejection of Marble’s PCR petition upon the Beach II concurrence. We conclude that a district court shall apply the statutory test set forth in § 46-21-102(2), MCA, in determining the disposition of a timely filed petition for postconviction relief based upon newly discovered evidence, and shall do so in accordance with the provisions of §§ 46-21-102(2) and -201, MCA, and this Opinion. Because the District Court erred in narrowly circumscribing the relief available to Marble premised upon the Beach II concurrence, we reverse and remand for reconsideration of Marble’s petition under the standards announced herein.
¶40 Reversed and remanded.
JUSTICES SHEA, BAKER, WHEAT and DISTRICT JUDGE HAYWORTH, sitting for CHIEF JUSTICE McGRATH concur.

 As we have previously designated Beach v. State, 2009 MT 398, 353 Mont. 411, 220 P.3d 667 as Beach I, we designate our opinion in State v. Beach, 2013 MT 130, 370 Mont. 163, 302 P.3d 47 as Beach II.

 State v. Marble, 2010 MT 210N, is a non-cite opinion that shall not be cited as precedent.