JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 Robert Wilkes appeals from the order of the Montana Fourth Judicial District Court, Missoula County, denying his petition for post-conviction relief. We reverse and remand.
ISSUES
¶2 We review the following issues:

1. Did the District Court err by failing to adequately address Wilkes’s claims for post-conviction relief?

2. Did the District Court err by denying Wilkes’s IAC claim?

3. Did the District Court abuse its discretion by denying Wilkes’s post-conviction relief claims before conducting a hearing?

FACTUAL AND PROCEDURAL BACKGROUND
¶3 Wilkes’s three-month-old son, Gabriel, died on October 26,2008, following hemorrhaging in his head sustained on or before October 4, 2008. According to Wilkes, he had put Gabriel to sleep on the evening of October 4, 2008, after retrieving Gabriel from the care of a babysitter. A few minutes later, he discovered that Gabriel had vomited and was limp. He attempted CPR and, unable to find his phone, took Gabriel to the babysitter’s nearby apartment. The *390 babysitter called 911 while Wilkes continued to perform CPR.
¶4 When paramedics arrived, Gabriel was taken to Missoula Community Hospital and then, on October 6, 2008, to Sacred Heart Children’s Hospital in Spokane, Washington. Doctors in Spokane found evidence of retinal hemorrhaging and subdural hemorrhaging in Gabriel’s brain, and they placed him on life support. Ultimately, Gabriel was removed from life support on October 21, 2008, and he died five days later.
¶5 Suspecting that Gabriel’s injuries were non-accidental and caused by his father, the State charged Wilkes with deliberate homicide. At trial, the State argued that Gabriel died from abusive head trauma (AHT) (more commonly known as shaken baby syndrome) caused by Wilkes. The State’s theory was that Gabriel was healthy when he left the care of the babysitter and that because he was in Wilkes’s exclusive control thereafter, Wilkes must have been the cause of Gabriel’s AHT. To support this theory, the State provided evidence that the babysitter fed Gabriel a bottle of formula just before Gabriel left the babysitter’s care. It then provided expert witness testimony that Gabriel’s injuries were consistent with an AHT diagnosis, that symptoms of AHT are displayed almost immediately followinginjury, and that Gabriel would not have been able to drink the bottle of formula once he was suffering from AHT. Based on this evidence, the State concluded that Gabriel was not suffering from AHT when he left the babysitter’s care; that he was suffering from AHT by the time Wilkes and Gabriel returned to the babysitter’s; that the injury causing Gabriel’s AHT occurred in the interim; and that because Wilkes had exclusive control over Gabriel during this time, Wilkes must have caused Gabriel’s AHT and resulting death.
¶6 Wilkes, represented by Scott Spencer, did not call any expert witnesses or, for that matter, any witnesses other than himself at trial. When he testified, Wilkes maintained his innocence, claiming that he did not harm Gabrielin any way. Meanwhile, Wilkes, through Spencer, left much of the State’s evidence unrefuted. At trial, Spencer told the jury that “virtually!] everything [in this case] is agreed to” but that Wilkes should be found not guilty because there was reasonable doubt as to the timing of the AHT. In the alternative, he argued that Wilkes was at most guilty of negligent homicide rather than deliberate homicide. Spencer did not introduce any evidence to support either of these theories. Ultimately a jury found Wilkes guilty of deliberate homicide. A judgment was entered on June 16,2010, sentencing him to 40 years in Montana State Prison.
¶7 On July 18,2011, Wilkes filed a petition for post-conviction relief *391 pro se. In it, he claimed that he received ineffective assistance of counsel (IAC). Wilkes requested appointment of counsel on November 3,2011, and on March 2,2012, the Montana Innocence Project filed a notice of appearance to represent him. Following several continuances and an uncontested motion to amend Wilkes’s petition, an amended petition for post-conviction relief was filed on September 5,2012. In it Wilkes argued, supported by the testimony of several experts, that he should receive a new trial because he received IAC and because he had discovered new evidence warranting a new trial.
¶8 The State responded to the amended petition on May 3, 2013. Included with the response was an affidavit from Spencer. The State argued that Wilkes had not received IAC and that the evidence Wilkes presented did not warrant a new trial. Following a reply brief from Wilkes, the District Court decided that an evidentiary hearing was not necessary and that, based on the filings before it, Wilkes was not entitled to a new trial. It denied Wilkes’s petition for post-conviction relief.
STANDARDS OF REVIEW
¶9 We review a district court’s denial of a petition for post-conviction relief to determine whether the court’s findings of fact are clearly erroneous and whether its conclusions of law are correct. Heath v. State, 2009 MT 7, ¶ 13, 348 Mont. 361, 202 P.3d 118. We review discretionary rulings in post-conviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, for an abuse of discretion. Heath, ¶ 13. We review de novo the mixed questions of law and fact presented by claims of IAC. Heath, ¶ 13.
DISCUSSION
¶10 1. Did the District Court err by failing to adequately address Wilkes’s claims for post-conviction relief?
¶11 Wilkes claims that the District Court erred when it inadequately addressed his IAC and newly discovered evidence claims. We address the IAC claim at paragraphs 18 through 33, and address his newly discovered evidence claim below.
¶12 A district court must adequately address a petitioner’s post-conviction relief claims before dismissing them. We have remanded cases and ordered district courts to make further findings and conclusions when the district courts have failed to address each post-conviction relief claim. Heath, ¶ 26; Williams v. State, 2002 MT 189, ¶¶ 24-28, 311 Mont. 108, 53 P.3d 864. We have also remanded cases for *392 further proceedings where we were unable to determine from a district court’s order the facts upon which the district court based its legal conclusions. Beach v. State, 2009 MT 398, ¶ 51, 353 Mont. 411, 220 P.3d 667.
¶13 The District Court failed to specifically address Wilkes’s newly discovered evidence claim. The District Court made no specific conclusion regarding this claim. Rather, it described the evidence and then restated and summarized the parties’ arguments without comment or analysis. The District Court did not even identify the legal standard required for a petitioner to succeed on a newly discovered evidence claim. Although this claim is related to and involves much of the same evidence as Wilkes’s IAC claim, and although the District Court analyzed much of the evidence when considering Wilkes’s IAC claim, this does not make its analysis adequate. Wilkes is entitled to have his newly discovered evidence claim independently considered, and the District Court erred when it did not do so. Williams, ¶ 27.
¶14 Regardless, the State argues that the District Court correctly denied Wilkes’s newly discovered evidence claim and that we should affirm its decision. Wilkes also makes arguments on the merits of its newly discovered evidence claim. We have considered such arguments — arguments on the merits of an issue that we have decided a District Court inadequately addressed — as harmless error arguments. See Kills On Top v. State, 2000 MT 340, ¶¶ 17-18, 303 Mont. 164, 15 P.3d 422. While we construe the State’s argument to be a harmless error argument here, we cannot conclude that the District Court’s failure to adequately address Wilkes’s newly discovered evidence claim was harmless.
¶15 While this case was pending on appeal and after briefing had ended, we decided Marble v. State, 2015 MT 242, 380 Mont. 366, 355 P.3d 742. In that decision, we clarified that this Court no longer applies either of the standards that the parties in this case urge us to apply to Wilkes’s newly discovered evidence claim. Specifically, we stated that neither the actual-innocence standard of the concurrence in State v. Beach, 2013 MT 130, 370 Mont. 163, 302 P.3d 47, nor the reasonable-probability-of-a-different-outcome standard of State v. Clark, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099, provides the legal standard by which we judge newly discovered evidence claims that are made in timely filed petitions for post-conviction relief. Marble, ¶¶ 30-32. Instead, we decided that the standard is the one stated in § 46-21-102(2), MCA:
We therefore conclude that a district court presented with a *393 postconviction petition based upon newly discovered evidence shall utilize the very test set forth in § 46-21-102, MCA. It shall determine whether the “newly discovered evidence ..., if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct” for which he or she was convicted.
Marble, ¶ 36 (quoting § 46-21-102(2), MCA). The District Court has not had the opportunity to address Wilkes’s claim according to this standard, and we will not address the claim here. See Marble, ¶ 37. As such, we will not hold that the District Court’s failure to adequately address Wilkes’s claim was harmless.
¶16 For the foregoing reasons, we remand Wilkes’s newly discovered evidence claim to the District Court. On remand, the District Court should independently consider and rule on Wilkes’s newly discovered evidence claim, making written findings of fact and conclusions of law.
¶17 2. Did the District Court err by denying Wilkes’s IAC claim?
¶18 Wilkes argues that Spencer rendered IAC and that the District Court erred by deciding otherwise. The State responds that the District Court correctly decided that Wilkes’s alleged acts or omissions did not constitute IAC because they were reasonable and not prejudicial. We disagree.
¶19 In his petition for post-conviction relief, Wilkes argued that Spencer rendered IAC by failing to adequately prepare for trial.[1] He contended that as a result of this inadequate preparation, Spencer made decisions and took positions at trial inconsistent with the goals and objectives Wilkes identified for his defense. To support this contention, Wilkes provided expert testimony and evidence that he claimed Spencer should have presented at trial. To be clear, Wilkes did not argue that Spencer rendered IAC merely by failing to present this particular evidence or evidence like it. Instead, Wilkes pointed to the evidence as proof that Spencer inadequately prepared for trial by failing to identify similar evidence and arguments and as proof that *394 with adequate preparation Spencer could have conducted a defense consistent with Wilkes’s goals and objectives.
¶20 The District Court decided that Spencer did not render IAC for two reasons. First, it decided that Spencer’s decision not to challenge the AHT diagnosis was strategic and could not constitute IAC for this reason. Second, it decided that, considering the evidence Wilkes presented, even if Spencer had challenged Gabriel’s diagnosis the result of the trial would have been the same. We cannot affirm the District Court’s decision on either basis.
¶21 As an initial matter, the District Court did apply the correct standard of law for reviewing Wilkes’s IAC claim. As the court noted, this Court has adopted the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), for assessing claims of IAC. Heath, ¶ 17. To bring a successful claim under this test, a petitioner must prove that acts or omissions of counsel were both unreasonable and prejudicial to the petitioner’s defense. Soriach v. State, 2002 MT 187, ¶ 15, 311 Mont. 90, 53 P.3d 878. We will affirm a district court’s decision to deny relief based on an IAC claim if the petitioner has failed to prove either prong of Strickland. State v. Cobell, 2004 MT 46, ¶ 15, 320 Mont. 122, 86 P.3d 20.
¶22 We cannot affirm the District Court’s decision based on its conclusion that Spencer’s decision not to challenge Gabriel’s diagnosis was reasonable. The District Court decided that Spencer’s decision was strategic and therefore entitled to a presumption of reasonableness. It then dismissed Wilkes’s IAC claim in conclusory fashion.
¶23 While strategic decisions of counsel are entitled to a strong presumption of reasonableness, they are not immunized from IAC claims. Before affording strategic decisions a presumption of reasonableness, a reviewing court must consider whether the underlying strategy is reasonable. Whitlow v. State, 2008 MT 140, ¶¶ 17-19, 343 Mont. 90, 183 P.3d 861; Soriach, ¶ 22. The question when deciding whether an attorney’s decision was reasonable “is not merely whether counsel's conduct flowed from strategic decisions and trial tactics but, rather, whether it was based on ‘reasonable’ or ‘sound’ professional judgment.” Whitlow, ¶ 19. This is measured in light of the surrounding circumstances and the prevailing professional norms. Whitlow, ¶ 19.
¶24 The District Court erred when it concluded without explanation and without considering Spencer’s underlying reasons, that Spencer’s decisions regardingthe evidence presented at trial were “strategic.” The only real rationales the District Court provided for this *395 decision were its conclusions that Spencer’s obligation to prepare was discharged as soon as he consulted an expert that returned an AHT diagnosis and that “[e]vidently Mr. Spencer is doing something right” because the last five trials Spencer tried in the Fourth Judicial District resulted in an acquittal or a hung jury. We do not agree that consulting a single expert rendered Spencer’s decision to not challenge the State’s experts reasonable per se, nor do we agree that Spencer’s record before the court in other cases entitled his actions to some presumption of reasonableness. More importantly, neither reason the District Court provided measures the reasonableness of Spencer’s decision in light of the circumstances of Wilkes’s case. For these reasons, we conclude the District Court erred by determining, on this record, that Spencer’s actions were reasonable and did not constitute IAC. We cannot affirm its decision on this basis.
¶25 We also cannot affirm the District Court’s decision based on its conclusion that Spencer’s decision not to challenge Gabriel’s diagnosis did not prejudice Wilkes’s defense. The court examined the expert evidence Wilkes presented in his petition and decided that challenging Gabriel’s AHT diagnosis would not have presented a reasonable probability of resulting in a different outcome. We likewise conclude the District Court erred in making this determination on this record. ¶26 The District Court relied on our decision in Elliott v. State, 2005 MT 10, 325 Mont. 345, 106 P.3d 517, to justify its decision. In Elliott, the petitioner argued that her counsels’ failure to secure an expert that would testify in support of her defense prejudiced her. Elliott, ¶ 10. We disagreed because she “failed to establish that an expert could be found who would testify affirmatively about her defense theoryElliott, ¶ 10. We reasoned that her assertions that an expert could be found and that such an expert’s testimony would have changed the result of her trial were based on “mere speculation.” Elliott, ¶ 10.
¶27 The District Court’s reliance on Elliott was misplaced. We recognize that, similar to the petitioner in Elliott, Wilkes suggests that Spencer should have presented expert testimony to challenge the State’s experts and theories. Unlike in Elliott, however, Wilkes does not merely speculate that such an expert exists or that the expert would testify persuasively to an alternate diagnosis; Wilkes specifically identified multiple experts that Spencer could have called at trial and provided the court with their written opinions. There was no need for the court to speculate about whether expert testimony was available, what the testimony would contain, or what impact such testimony would have. For these reasons, the District Court was incorrect to rely *396 on Elliott as authority for its decision that Wilkes was not prejudiced by Spencer’s actions.
¶28 Moreover, it was incorrect to decide that Wilkes’s expert evidence did not indicate that he was prejudiced by Spencer’s actions. The District Court seemed to incorrectly assume that to prove prejudice Wilkes was required to present expert testimony that would have definitively shown that AHT is a medically unacceptable diagnosis in all situations or otherwise have definitively proven Wilkes’s innocence. This was an improperly high standard.
¶29 To prove that he or she has been prejudiced, a petitioner is not required to show that but for the attorney’s actions the results of his or her trial would have been different. Instead, prejudice is sufficiently proven if the petitioner is able to show that absent his or her attorney’s actions there was a reasonable probability that the result of his or her trial would have been different. Soriach, ¶ 15.
¶30 Here, Wilkes was convicted of deliberate homicide. At trial, therefore, the State was required to prove and the jury required to find that Wilkes was guilty “beyond a reasonable doubt.” See State v. Price, 2002 MT 284, ¶ 33, 312 Mont. 458, 59 P.3d 1122. The trial would have resulted in a different outcome if Wilkes had been able to establish reasonable doubt as to any element of the offense. To do so, Wilkes did not need to definitively prove, as the District Court seemed to assume, that Spencer could have proven AHT to be a medically unacceptable diagnosis under all circumstances or that Gabriel’s death was caused by something other than AHT. Instead, it would have been enough for Wilkes to show that there was a reasonable probability that if Spencer adequately prepared and engaged the experts Wilkes presents he would have been able to raise a reasonable doubt as to his guilt. See Soriach, ¶ 15.
¶31 Wilkes may very well have done so, and the District Court’s conclusion otherwise is based on a misapprehension of the effect of Wilkes’s evidence. Wilkes presented evidence from experts that he claims Spencer could have and should have consulted. This evidence presents several alternate explanations for Gabriel’s death besides AHT, and Wilkes’s experts state that these explanations were just as likely or more likely the causes of Gabriel’s death than AHT. The evidence also challenges the medical validity of an AHT diagnosis under any circumstances.
¶32 We are not able to say whether the evidence does, in fact, raise a reasonable probability of reasonable doubt as to Wilkes’s innocence, given the state of the record and the insufficiency of the District Court’s analysis. But, nor are we able to agree with the District Court *397 that the evidence does not indicate such reasonable probability of reasonable doubt, or correspondingly, that Spencer’s actions prejudiced Wilkes. The District Court dismissed Wilkes’s claim because it decided that Wilkes’s evidence was conflicting and equivocal and therefore inadequate to definitively prove that AHT was a medically unacceptable diagnosis or that Wilkes was innocent. By doing so, the District Court misapprehended the effect of Wilkes’s evidence and erred by holding Wilkes to a standard that was improperly high.
¶33 We reverse the decision of the District Court. We do not, however, decide that its ultimate conclusion was incorrect. On remand, the District Court should reconsider Wilkes’s evidence in light of the standard specified in this Opinion, and it should make written findings of fact and conclusions of law.
¶34 3. Did the District Court abuse its discretion by denying Wilkes’s post-conviction relief claims before conducting a hearing?
¶35 A district court is not required in all circumstances to hold an evidentiary hearing on a petition for post-conviction relief. Heath, ¶ 21. According to § 46-21-201(l)(a),MCA, a district court has the discretion, following a responsive pleading, to dismiss a petition for post-conviction relief based solely upon the files and records of the case. See Heath, ¶ 16; Griffin v. State, 2003 MT 267, ¶ 12, 317 Mont. 457, 77 P.3d 545. Wilkes argues that the District Court abused this discretion when it failed to hold an evidentiary hearing before ruling on his claims for post-conviction relief. He asks this Court to order the District Court to conduct an evidentiary hearing on remand. We decline to do so.
¶36 Based on our discussion of the foregoing issues, we have decided to reverse and remand, ordering the District Court to reconsider Wilkes’s newly discovered evidence and IAC claims in light of the standards we have identified. The District Court applied different standards in its order and, as such, it has not yet decided whether an evidentiary hearing will be required for it to properly dispose of Wilkes’s claims based on the standards we have specified. Although a hearing may be necessary for the District Court to properly dispose of Wilkes’s claims, the decision to hold a hearing is left to the discretion of the District Court. We will not prematurely dictate — before the District Court has had the opportunity to exercise its discretion — that failing to hold a hearing on remand would be an abuse of discretion.
CONCLUSION
¶37 The District Court inadequately addressed Wilkes’s newly discovered evidence claim. This error was not harmless. The District *398 Court erred when it denied Wilkes’s IAC claim. It misapplied the law and misapprehended the effect of Wilkes’s evidence. For these reasons, we reverse and remand for proceedings consistent with this Opinion.
JUSTICES SHEA, COTTER, BAKER and RICE concur.

 He also argued that Spencer rendered IAC by failing to appeal his conviction. However, Wilkes does not mention the failure to appeal claim in his briefs to this Court, beyond an unsupported statement that Spencer failed to provide Wilkes with adequate representation “post-trial.” As we will not conduct legal research or formulate arguments on a party’s behalf, this statement is not enough to make the failure to appeal claim an issue on appeal and we will not consider it here. See Riggs v. State, 2011 MT 239, ¶ 7, 362 Mont. 140, 264 P.3d 693.