JUSTICE MCKINNON,
dissenting.
¶39 The Court errs in concluding that the District Court did not adequately address Wilkes’ IAC claim. Wilkes alleges that he received ineffective assistance of trial counsel when his attorney failed to present information to the jury regarding disagreement in the medical community about SBS; argued at closing that Wilkes was, at most, guilty of negligent homicide; and failed to locate experts who would testify that there were natural causes for Gabriel’s death. The District Court, after applying the correct standard pursuant to Strickland, determined that there was no “reasonable probability" the result of the proceedings would have been different. Having conducted a detailed analysis of the expert affidavits filed by Wilkes, and after evaluating the affidavits in the context of evidence produced at trial, the District Court issued a 27-page order denying the petition. Judge McLean’s conclusion was based upon the evidence presented during an eight-day jury trial, including nine expert witnesses, over which he presided; nearly 300 pages of legal argument, affidavits, and exhibits presented during postconviction proceedings; a comprehensive review of the expert witness reports filed by Wilkes; and the affidavits of Wilkes’s trial counsel.
¶40 No one disputes that Wilkes’s post-trial expert witnesses presented alternative explanations for Gabriel’s death or that AHT was an imprecise or simplistic diagnosis. The evidence produced at trial, however, overwhelmingly demonstrated that the severity, degree, and kind of injuries that Gabriel suffered could only have been produced by some form of trauma. Gabriel had a documented history of numerous visits with the pediatrician and for well-child checkups, all of which confirmed he was a healthy, thriving infant prior to his injury. Concerns related to NH were never observed by the health care providers or noted in medical records. The jury heard this evidence and *399 considered the demeanor and credibility of the State’s witnesses, Wilkes’s credibility, the bruising on Gabriel’s back, the presence of older hematomas, the circumstances surrounding the evening, and the babysitter’s testimony. The State’s experts testified that after ruling out infections, disease, neurological deficits, aspiration of vomit, and other non-traumatic causes, the only conclusion that could be made based upon a rotational-type injury, severe retinal hemorrhaging, massive subdural hemorrhaging, and cortical venous thrombosis was that Gabriel’s injury occurred as a result of a violent trauma.
¶41 The Court fails to appreciate that, in the context of this overwhelming evidence of trauma, the District Court correctly concluded that the “waffling” of Wilkes’s expert witness, Dr. Peter Stephens, who opined that Gabriel may have suffered from NH rather than a from a violent trauma, would not have a reasonable probability of changing the outcome. Significantly, Dr. Stephens could not state that either chronic subdural hematoma or cortical venous thrombosis, which he identified as possible causes of Gabriel’s death, could he caused by NH. The best that Dr. Stephens could do was to testify that NH “may” have played a part in Gabriel’s death. Wilkes concedes that there is general agreement that violently shaking a baby could cause serious injury or death.
¶42 The affidavits of trial counsel established that the attorney assigned to represent Wilkes in a pending dependency and neglect proceeding contacted Scott Spencer, a criminal attorney, when Gabriel was first injured, suspecting that a criminal attorney may be needed. The matter was immediately staffed with the Regional Public Defender and the decision was made to retain Dr. Bennett to examine Gabriel in Spokane while Gabriel was still alive. Dr. Bennett concluded that Gabriel’s brain injury was a non-accidental rotational-type brain injury that would have become almost immediately symptomatic, and that Gabriel would not have been able to drink from a bottle as he had done with the babysitter. Dr. Bennett agreed with the State’s experts that Gabriel suffered an abusive head trauma. Trial counsel’s affidavits also established that they knew of theories challenging SBS and explored two theories involving rare diseases, but chose not to present these theories because they believed they would invariably fail.
¶43 The Court also errs when it concludes that the District Court failed to specifically address Wilkes’ newly discovered evidence claim. As the District Court correctly observed, nothing Wilkes presented was “new,” not even the expert opinion that Gabriel may have suffered from NH. NH, although an extremely rare disease, was not unknown to the medical profession at the time of Wilkes’ trial. The conclusion made by *400 the District Court that the evidence was not new, required that it evaluate the entirety of Wilkes’ claim as an IAC claim. This is exactly what the District Court did.
¶44 In light of the foregoing, and upon review of the trial record and record in these proceedings, I would affirm the judgment of the District Court. I further would conclude that the District Court did not abuse its discretion in making its decision without a hearing. The record was well-documented and thorough. Finally, to the extent the Court directs a different test be applied to newly discovered evidence than that set forth in State v. Beach, 2013 MT 130, 370 Mont. 163, 302 P.3d 47 (J. McKinnon concurring), I dissent for the reasons stated in my dissent in Marble v. State, 2015 MT 242, 380 Mont. 366, 355 P. 3d 742.